Opinion issued October 9, 2008 

 















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00820-CR

____________


CURTIS ROY KENNON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 1057191






MEMORANDUM OPINION

 A jury found appellant, Curtis Roy Kennon, guilty of the offense of felony
murder (1) and assessed his punishment at confinement for thirty years. In four points
of error, appellant contends that the trial court erred in concluding that police officers
had authority to arrest appellant without a warrant, in concluding that appellant's
videotaped statement was made voluntarily, and in not making any findings of fact
and conclusions of law regarding the voluntariness of appellant's videotaped
statement.

 We affirm.

Factual Background Amanda Dyer testified that in November 2005, she and the complainant, Mike
Ussin, became friends after she had bought some crack cocaine from him. When
Dyer and her boyfriend, Thomas Dockery, moved into the Gateway Inn, they
frequently invited the complainant into their motel room to smoke crack cocaine. 
Dyer's relationship with the complainant changed when, in January 2006, Dyer had
sex with the complainant to pay off a debt that she owed to him. After this incident,
the complainant began "touching" Dyer in a way that made her uncomfortable, and
when Dyer informed Dockery of the "touching," Dockery became upset and wanted
to "beat up" the complainant. Also, in January 2006, Dyer and Dockery met appellant
and smoked crack cocaine with him on several occasions. Dyer explained that
appellant was present when Dockery said that "he wanted to beat up [the
complainant]." 

 On February 8, 2007, the complainant "showed up" at Dyer's motel room and
smoked crack with Dyer, Dockery, and appellant, who had spent the night in the
motel room. In the early afternoon, after leaving the motel room, the complainant
called Dyer to tell her that he had to come back to pick up his jacket. Appellant and
Dockery left the room for awhile, and when they returned to the motel room, Dockery
told Dyer, "[W]e're going to jack him." However, when the complainant returned to
retrieve his jacket, he brought more crack cocaine, which everyone smoked. Dyer
explained that as the complainant was sitting on the bed with Dyer smoking crack
cocaine, appellant approached the complainant from behind and hit him in the back
of the head with a can of beans. After the complainant got up to fight back, Dockery
joined the fight. Dyer next remembered that appellant struck the complainant on the
head with a glass bottle as Dockery held the complainant on the floor in a chokehold. 
After incapacitating the complainant, appellant and Dockery bound the complainant's
hands with duct tape. Appellant then took off his belt, put it around the
complainant's neck, and "yanked up" on the belt, which pulled the complainant at
least one foot off of the floor. Before leaving the motel room, appellant went through
the complainant's pockets to get the complainant's wallet and money, and Dockery
took the complainant's cocaine. Dyer took a few things with her when she left but
remembered that she had left a spiral notebook, which contained appellant's name,
in the motel room. 

 Appellant testified that the complainant and Dyer had sex multiple times and
that Dockery was aware of their sexual relationship. Appellant stated that it was
Dockery, not appellant, who started the fight with the complainant, and, after Dockery
hit the complainant, the complainant came towards appellant with his "fists bared." 
Appellant explained that he then threw a can of beans at the complainant because he
was afraid of the complainant and only hit the complainant with a bottle after
Dockery had told him to do so. Appellant then took off his belt and tied it around the
complainant's neck for about twenty seconds. After being hit repeatedly by the
complainant, appellant let go of the belt and watched Dockery choke the complainant
for about forty-five seconds before Dockery pounded the complainant's head with a
can of beans. 

 Appellant admitted that previously he had heard Dockery say that he wanted
to beat up the complainant, but he denied having any plan to help Dockery. Appellant
also admitted that he subsequently helped Dockery bind the complainant's hands
behind his back with duct tape, but he denied touching the complainant again. Before
leaving the motel room, appellant took approximately six hundred dollars out of the
complainant's wallet, and Dockery took some cocaine from the complainant's
pockets. After leaving the complainant bound on the floor, appellant went to a motel
across the highway and paid for a room for himself, Dyer, and Dockery. However,
appellant did not remain in the hotel room; he spent the night at a friend's apartment. 
On the following day, police officers took appellant into custody, and appellant gave
the police officers a videotaped statement. Standard of Review

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling
on a question of the application of law to facts, we review the evidence in the light
most favorable to the trial court's ruling. Montanez v. State, 195 S.W.3d 101, 106
(Tex. Crim. App. 2006). At a suppression hearing, the trial court is the sole and
exclusive trier of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at
281. Accordingly, the trial court may choose to believe or to disbelieve all or any
part of the witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App.
2000).

 In reviewing a trial court's ruling, we generally consider only evidence
adduced at the suppression hearing because the ruling was based on it rather than
evidence introduced later. Rachal v. State, 917 S.W.2d 799, 809 (Tex. Crim. App.
1996). However, this general rule is inapplicable when the parties consensually
relitigate the suppression issue during the trial on the merits. Id. When the State
raises the issue at trial either without objection or with the defense's subsequent
participation in the inquiry, the defendant has made an election to reopen the
evidence, and consideration of the relevant trial testimony is appropriate in our
review. Id. In the instant case, because appellant fully participated in the relitigation
of the issue through his cross-examination of Pasadena Police Department Detective
E. Rogge and appellant's testimony during trial, we consider Rogge's and appellant's
trial testimony in our review of the trial court's suppression ruling. See id.

Motion to Suppress

 In four points of error, appellant argues that the trial court erred in denying his
motion to suppress his videotaped statement because the warrantless arrest of
appellant was unreasonable, he gave his videotaped statement involuntarily, and the
trial court provided insufficient findings of fact and conclusions of law regarding the
voluntariness of his videotaped statement. 

 At a pretrial hearing on appellant's motion to suppress, Pasadena Police
Department Detective I. Villareal testified that at approximately 1:40 p.m. on
February 8, 2006, the complainant was found dead in a motel room at the Gateway
Inn. Because Dyer had last rented the room, she was the primary suspect. Villareal
subsequently learned that Dyer had stayed in the motel room with Dockery. Police
officers subsequently apprehended Dockery and Dyer, who told the officers that
appellant was with them during the beating of the complainant. Also, police officers
discovered a notebook that contained appellant's name in the motel room. 

 Because Villareal did not know of "a particular address" for appellant and had
learned that appellant "was going from motel to motel," Villareal made a "wanted
flier" describing appellant, and he passed the fliers out to police officers at
approximately 8:00 p.m. At approximately 10:30 p.m., Villareal received a telephone
call that appellant had been arrested at a local convenience store. When asked why
he did not obtain a warrant for appellant's arrest, Villareal explained that appellant
"had no permanent residence," "was going from motel to motel . . . [and there was no]
permanent address where he could be contacted." Villareal also believed that
appellant "was a flight risk." 

 Pasadena Police Department Detective R. Sorrell testified that, after he
conducted a routine traffic stop at a Pasadena convenience store, appellant walked up
to the convenience store, looked at him, and went inside. Sorrell saw that appellant
looked like the person in the wanted flier, so he went inside of the convenience store 
and "arrested" appellant. Sorrell did not promise anything to appellant or threaten
appellant in any way. Sorrell explained that he arrested appellant because of his
involvement in the death of the complainant and he was "a transient and a flight risk." 
Sorrell further explained that appellant complied with his instructions during the
arrest. On cross-examination, Sorrell stated that appellant kept walking at the same
pace into the convenience store after seeing him and other police officers.

 Pasadena Police Department Detective E. Rogge testified that when he
searched for Dyer's name at local motels in Pasadena, he learned that Dyer was
staying at the Tropicana Motel. When Rogge arrived at Dyer's room, he found Dyer
and Dockery. Dyer stated, "I didn't do anything. They just kept beating him." Both
Dockery and Dyer told Rogge that appellant had participated in beating and choking
the complainant. After Sorrell arrested appellant, Rogge interviewed appellant at the
police station. Rogge read appellant his legal rights and appellant signed a form,
which under a header entitled "WAIVER OF RIGHTS," provided, 

I have read this statement of my rights and I understand what my rights
are. I am willing to make a statement and answer questions. I do not
want a lawyer at this time. I understand and know what I am doing. No
promises or threats have been made to me and no pressure or coercion
of any kind has been used against me.


During the interview, appellant asked to speak to an attorney, and, at that point,
Rogge terminated the interview. Rogge explained that, to his knowledge, appellant
had waived his legal rights. 

 On cross-examination, Rogge conceded that he had told appellant to "tell the
truth" and that "the only person that can help him is himself." Rogge also conceded
that he told appellant "you are screwing things up there," "I want you to tell the
truth," and "I'm trying to help you, son." At trial, Rogge further conceded that he had
told appellant that, by "giving . . . a statement[,] . . . he could help himself." At trial,
appellant testified that, after the beating of the complainant, he wanted to turn himself
in, and when he saw police officers at the convenience store, he went there to turn
himself in. He talked to the police officers because he wanted "to clear up any
misconceptions," tell his "story," and "tell the truth." Appellant asserted that
Detective Rogge told him to "come down to the police department and make a
statement and then [he] was free to go home" and that "the videotape was going to
help" him.

 In his videotaped statement, after Detective Rogge orally read him his rights,
appellant agreed that no one had "beat on [him], hit on [him], nothing like that." 
Appellant then admitted on videotape that he had taken part in beating the
complainant. 

Warrantless Arrest

 In his third and fourth points of error, appellant argues that the trial court erred
in denying his motion to suppress his videotaped statement because the State "failed
to prove by a preponderance of the evidence that the warrantless seizure of
[a]ppellant was reasonable, where under a 'totality of the circumstances' no exigency
existed and therefore [a]ppellant was not found in a 'suspicious place.'" See U.S.
Const. amends. IV, XIV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. Ann. art.
14.03 (Vernon Supp. 2008), art. 38.23 (Vernon 2005). 

 Under the United States Constitution, police officers may arrest a suspect
without a warrant as long as they have probable cause. United States v. Watson, 423
U.S. 411, 423-24, 96 S. Ct. 820, 828 (1976). In Texas, however, an officer may make
a warrantless arrest only if the officer has probable cause with respect to the person
being arrested and statutory authority to make the arrest. Neal v. State, 256 S.W.3d
264, 280 (Tex. Crim. App. 2008). 

 In Texas, a police officer may pursue and make a warrantless arrest of a suspect
when it is shown by satisfactory proof, "upon the representation of a credible person,
that a felony has been committed, and that the offender is about to escape, so that
there is no time to procure a warrant." Tex. Code Crim. Proc. Ann. art. 14.04
(Vernon 2005); see Neal, 256 S.W.3d at 280. 

 In Busby v. State, the Texas Court of Criminal Appeals considered, and
rejected, an argument similar to appellant's argument. 990 S.W.2d 263, 269-70 (Tex.
Crim. App. 1999). In Busby, the defendant shot the complainant and subsequently
left the scene of the offense in the complainant's pickup truck. Id. at 269. A police
officer relayed this information to other officers on his police radio, and a different
officer arrested the defendant after spotting the described pickup truck. Id. The
defendant asserted that the officer did not have statutory authority to arrest him
without a warrant. Id. Rejecting the defendant's challenge, the Texas Court of
Criminal Appeals explained,

Although we have held that the felony/escape rule is not satisfied merely
by proof that a suspect travels from one place to another, we have also
stated that "[t]he escape requirement is obviously met where the suspect
has previously fled." Here, the evidence available to the police shows
that [the defendant] had fled the scene of the [offense] in the
[complainant's] pickup truck. The [complainant] relayed the crime and
[the defendant's] flight to law enforcement officials. [The officer]
clearly had satisfactory proof that [the defendant] had committed a
felony and had already fled the scene of the [offense]. That evidence,
in turn, was satisfactory proof that appellant was about to escape.


Id. at 270 (internal citation omitted) (quoting Dowthitt v. State, 931 S.W.2d 244, 259
(Tex. Crim. App. 1996)); see also Montemayor v. State, 55 S.W.3d 78, 89 (Tex.
App.--Austin 2001, pet. ref'd) (concluding that, although defendant acted in "furtive
manner," officers had statutory authority to conduct warrantless arrest under felony-escape rule because defendant fled scene of offense and officers believed that
defendant was attempting to escape before they arrested defendant).

 Here, the evidence available to the police officers showed that appellant had
left the scene of the offense where police officers found the complainant dead. Both
Dyer and Dockery, who also fled the scene and were found at another motel, told
officers that appellant had participated in beating and choking the complainant. 
Detective Villareal testified that because he did not know of an address for appellant
who "was going from motel to motel," he made a "wanted flier," describing appellant
and passed out the flier to police officers. Within two and one-half of an hour of
passing out the flier, Detective Sorrell saw appellant at a convenience store. 
Detective Sorrell explained that he arrested appellant because of his involvement in
the death of the complainant and he was a "transient and a flight risk." This evidence
supports the trial court's conclusion that Detective Sorrell's warrantless arrest of
appellant was reasonable and "lawful." See Tex. Code Crim. Proc. Ann. art. 14.04;
Busby, 990 S.W.2d at 270. Accordingly, we hold that the trial court did not err in
denying appellant's motion to suppress his statement on the ground that his
warrantless arrest was made in violation of the United States and Texas Constitutions
and the Texas Code of Criminal Procedure.

 We overrule appellant's third and fourth points of error.

Voluntariness of Statement

 In his second point of error, appellant argues that the trial court erred in
denying his motion to suppress his statement because it was obtained "by overbearing
his will, so as to render it involuntary." See U.S. Const. amends. V, XIV. 

 A defendant's statement may be used in evidence against him if the defendant
made it freely and voluntarily and without compulsion or persuasion. Tex. Code
Crim. Proc. Ann. art. 38.21 (Vernon 2005). When considering whether a statement
was voluntarily made, we consider the totality of the circumstances in which the
statement was obtained. Creager v. State, 952 S.W.2d 852, 855 (Tex. Crim. App.
1997). 

 A confession is involuntary if circumstances show that the defendant's will was
overborne by police coercion. Id. The defendant's will may be "overborne" if the
record shows that there was "official, coercive conduct of such a nature" that a
statement from the defendant was "unlikely to have been the product of an essentially
free and unconstrained choice by its maker." Alvarado v. State, 912 S.W.2d 199, 211
(Tex. Crim. App. 1995). 

 A defendant's statement is also involuntary if it is induced by a promise that
was (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an
influential nature that it would cause a defendant to speak untruthfully. Henderson
v. State, 962 S.W.2d 544, 564 (Tex. Crim. App. 1997). An improper inducement
must be of an exceptional character before it will invalidate an otherwise voluntary
confession. Drake v. State, 123 S.W.3d 596, 603 (Tex. App.--Houston [14th Dist.]
2003, pet. ref'd). General, nonspecific offers to help a defendant are unlikely to elicit
a false statement from the defendant, and will not render a confession invalid. Id.
(citing Dykes v. State, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983)). Furthermore,
general statements about how a confession might result in more lenient treatment will
not invalidate the confession. Id.

 In support of his argument that his videotaped statement was obtained
involuntarily, appellant asserts that Detective Rogge gave him an "offer of freedom"
that, "if he cooperated and gave a statement, he would be free to go home." 
Appellant also asserts that there was a "threatening environment" when Rogge told
appellant "now your [sic] fixing to piss me off . . . do not leave anything out . . . your
[sic] starting to piss me off" and "[y]our [sic] screwing this up . . . tell the truth . . .
I'm trying to help you son."

 Even if Detective Rogge told appellant that he would be "free to go home" if
he gave a statement, such a representation was not a promise that would have induced
appellant to speak untruthfully and thus render appellant's confession involuntary. 
See Alvarez v. State, 649 S.W.2d 613, 620 (Tex. Crim. App. 1983) (holding that
police officer's statement that defendant could "probably go home" by giving
statement, even if promise, did not render confession involuntary); Gonzales v. State,
4 S.W.3d 406, 414-15 (Tex. App.--Waco 1999, no pet.) (concluding that officer's
statement to defendant "several times that he was free to go home" did not "influence
[defendant] to speak untruthfully" and render his confession involuntary). Also, any
statement by Rogge that he was trying "to help" and that, by giving a statement,
appellant "could help himself," were not the type of positive promises that would be
likely to influence appellant to speak untruthfully. See Dykes, 657 S.W.2d at 797
(holding that officer's general, but unspecific offers to help are not likely to induce
untruthful statement); Drake, 123 S.W.3d at 603 (officer's assertion to defendant that
she "could help herself" by giving statement did not render defendant's statement
involuntary). Finally, although Rogge confronted appellant and told him to tell the
complete "truth," nothing in the record suggests the officer's tactics improperly
compelled appellant to continue talking. See State v. Terrazas, 4 S.W.3d 720, 727
(Tex. Crim. App. 1999) ("[T]elling [defendant] in a noncustodial setting 'what had
to be' in [defendant's] statement is not the type of practice that has been held to be
inherently coercive as to make a statement involuntary."); Stevenson v. State, 780
S.W.2d 294, 298 (Tex. App.--Tyler 1989, no pet.) ("A confession is not rendered
inadmissible because an accused has been told by an officer taking the confession that
it would be best to tell the truth.").

 Here, the record shows that Detective Rogge read appellant his legal rights, and
appellant waived those rights orally and in writing. Appellant's assertion that a
"threatening" environment rendered his videotaped statement involuntary is without
evidentiary support. In fact, his videotaped statement shows that appellant agreed
that "no one had beat on him" and that he gave his statement completely by his own
free will. Also, when appellant did ask for an attorney, Detective Rogge terminated
the interview. Based on the record presented, Rogge's tactics cannot be characterized
as abusive and coercive. The evidence presented supports the trial court's conclusion
that appellant knowingly waived his legal rights before making his voluntary
videotaped statement. Accordingly we hold that the trial court did not err in denying
appellant's motion to suppress his videotaped statement to police officers on the
ground that it was made involuntarily.

 We overrule appellant's second point of error.

Findings of Fact and Conclusions of Law

 In his first point of error, appellant argues that the trial court's findings of fact
and conclusions of law on the voluntariness of his videotaped statement are
insufficient for appellate review. Appellant asserts that the trial court "has failed to
make any findings as to voluntariness."

 When the voluntariness of a statement made by a defendant is questioned, the
trial court is required to make an independent finding, outside the jury's presence, as
to whether the statement was made under voluntary conditions. Tex. Code Crim.
Proc. Ann. art. 38.22, § 6 (Vernon 2005). If the trial court determines that the
defendant made the statement voluntarily, it must then enter findings of fact and
conclusions of law. Id.; Urias v. State, 155 S.W.3d 141, 142 (Tex. Crim. App. 2004). 
The "'[f]indings need not be made with minute specificity as to every alleged and
hypothetical possibility for physical or mental coercion, but need only be sufficient
to provide the appellate court and the parties with a basis upon which to review the
trial court's application of the law to the facts.'" Vasquez v. State, 179 S.W.3d 646,
654 (Tex. App.--Austin 2005) (quoting Nichols v. State, 810 S.W.2d 829, 831 (Tex.
App.--Dallas 1991, pet. ref'd)), aff'd, 225 S.W.3d 541 (Tex. Crim. App. 2007). 
Thus, the trial court is not required to make specific findings about how conflicting
testimony does not render the defendant's statement involuntary. Guidry v. State, 9
S.W.3d 133, 141 (Tex. Crim. App. 1999).

 Here, the trial court filed twelve findings of fact in which it noted that before
questioning began, Detective Rogge had informed appellant of his legal rights; 
appellant agreed to answer Rogge's questions after indicating that he understood his
legal rights; and appellant voluntarily offered information regarding his involvement
in the offense. The findings of fact explain that the interview was videotaped. Also,
the trial court, in its conclusions of law, noted that appellant knowingly, intelligently,
and voluntarily waived his legal rights.

 The trial court's findings, noting that appellant had voluntarily offered
information, address the issue of whether or not appellant was threatened or coerced
into giving his videotaped statement. The trial court was not required to specifically
address the facts that appellant believes would show such coercion. See Guidry, 9
S.W.3d at 142 (reasoning that trial court need not outline testimony that does not
support its conclusions). Accordingly, we hold that the trial court did not fail to make
sufficient findings of fact and conclusions of law for appellate review.

 We overrule appellant's first point of error.

Conclusion

 We affirm the judgment of the trial court. 



 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).