Jasen Shane BUSBY, Appellant,

v.

The STATE of Texas.

No. 72,539.

Court of Criminal Appeals of Texas.

March 31, 1999.

Rehearing Denied May 5, 1999.

---

Forrest K. Phifer, Rusk, for appellant.

James H. Cromwell, Dist. Atty., Rusk, Matthew Paul, State's Atty., Austin, for the State.

### OPINION

KELLER, J., delivered the opinion of the Court in which McCORMICK, P.J., and MANSFIELD, HOLLAND, WOMACK, and KEASLER, JJ. joined.

At a trial beginning in May 1996, appellant was convicted of capital murder, committed on or about April 17, 1995. Texas Penal Code § 19.03(a)(7)(A).[1] Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Article 37.071 § 2(g).[2] Direct appeal to this Court is automatic. Article 37.071 § 2(h). Appellant raises eleven points of error, ten in his original brief and one in a supplemental brief. We will affirm.

On April 17, 1995, appellant shot Chris Kelley, Tennille Thompson, and Brandy Gray. Thompson and Gray died, while Kelley was wounded. Appellant then drove off in Kelley's pickup truck. Because appellant does not challenge the sufficiency of the evidence, we dispense with a more detailed recitation of the facts except as relevant to his points of error.

### 1. Venue

In points of error three and four, appellant contends that the trial court erred in failing to grant his motion to change venue. Appellant contends that the State failed to properly controvert his motion to change venue, and hence, he was entitled to a change of venue as a matter of law. In support of his motion to change venue, appellant filed two affidavits alleging that appellant could not obtain a fair trial in Cherokee County. In response, the State filed two affidavits alleging that the affiants in support of appellant's position lacked credibility in that they were prejudiced for the appellant and their means of knowledge was insufficient to support their statements.

However, when the State's affiants were placed on the witness stand, they contradicted the assertions in their affidavits. The State's affiants testified that they did not know one of appellant's affiants and could not testify as to that person's credibility. And, although both of the State's affiants knew appellant's other affiant, the State's affiants could not testify that the person lacked credibility (in fact, one of the State's affiants testified that the person was trustworthy). And one of the State's affiants testified, contrary to statements in his affidavit, that he had not in fact read appellant's affidavits.

Appellant concedes that Cockrum v. State, 758 S.W.2d 577, 582–583 (Tex.Crim. App.1988), cert. denied, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989) is directly on point and adverse to his position. We observe that the affidavits in the present case consist of language that is virtually identical to that of the affidavits in Cockrum. See Id. at 582. Moreover, as in the present case, the State's affiants, when placed on the witness stand, testified contrary to the allegations in their affidavits. Id. at 583. We held, however, that the purpose of the controverting affidavits required by Article 31.04 "is to provide a form of pleading which establishes that there is a factual dispute in need of resolution." Id. We held that the affidavits

---

**1.** § 19.03(a)(7)(A) provides that a person commits capital murder when he murders "more than one person"..."during the same criminal transaction" (ellipsis inserted).

**2.** Unless otherwise indicated all future references to Articles refer to the version of the Code of Criminal Procedure in effect at the time of appellant's trial.

served to establish that factual dispute despite the fact that the affidavits were later contradicted by the affiants on the witness stand. *Id.* We have subsequently reaffirmed *Cockrum*'s holding. *Burks v. State,* 876 S.W.2d 877, 890 (Tex.Crim.App. 1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).

Appellant contends that we should not follow *Cockrum.* He relies upon Texas Rules of Criminal Evidence 602 and 701, upon Article 31.04's requirement that a controverting affidavit be made by a "credible" person, and upon the Equal Protection Clause of the Fourteenth Amendment. In relying upon Rules 602 and 701, appellant contends that those rules require that an affiant have personal knowledge of the information contained in a controverting affidavit. However, we have specifically held that personal knowledge is not required and that Rule 602 does not apply to the affidavits required by Article 31.04. *Burks,* 876 S.W.2d at 890. Because appellant's reliance upon Rule 701 is tied to his allegation that personal knowledge is required, the reasoning in *Burks* disposes of his claim under that rule as well.

Appellant further claims that 31.04's requirement that a controverting affidavit be made by a "credible" person means that impeachment of an affidavit's contents by the affiant on the witness stand renders the affidavits unusable because the affiant is shown to be not credible. We make several observations about this contention. First, that an affidavit turns out to be false may be evidence of a lack of credibility but does not automatically render a witness non-credible. Second, a state's affiant could infer from his belief that appellant can receive a fair trial in the county that the appellant's affiants must necessarily lack an adequate means of knowledge with regard to their statements that appellant cannot receive a fair trial. That inference could be made regardless of whether the State's affiant knows appellant's affiants or whether the State's affiant believes that appellant's affiants are not credible as a general matter.

And, we observe that, given *Cockrum,* we are not writing on a clean slate concerning this issue. The doctrine of *stare decisis* indicates a preference for maintaining consistency even if a particular precedent is wrong. *See Malik v. State,* 953 S.W.2d 234, 236 (Tex.Crim.App. 1997). The interests underlying the doctrine of *stare decisis* are at their height for judicial interpretations of legislative enactments upon which parties rely for guidance in attempting to conform to those legislative enactments. "When the Legislature meets, after a particular statute has been judicially construed without changing the statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Marin v. State,* 891 S.W.2d 267, 271–272 (Tex. Crim.App.1994); *State v. Hardy,* 963 S.W.2d 516, 523 (Tex.Crim.App.1997). Article 31.04 has remained unchanged since *Cockrum* was decided in 1988 and was reaffirmed by *Burks* in 1994. Moreover, the State may well have relied upon our interpretation in *Cockrum* in determining how to proceed on the venue motion. Hence, even if we believed that appellant's interpretation necessarily followed from the language in Article 31.04 (which we do not), we would find that the interests underlying the doctrine of *stare decisis* are weighty enough, in the present case, to adhere to our decision in *Cockrum.*

Finally, appellant argues that treating the 31.04 affidavit as a mere pleading requirement denies equal protection because the State's affidavits controverting the motion to change venue do not have to meet the same requirements as appellant's affidavits supporting a change of venue. Assuming *arguendo* that the supporting and controverting affidavits are treated differently, that difference does not constitute an equal protection violation. Because a change of venue premised upon a mere failure to controvert affidavits neither discriminates against a suspect class

nor denies a fundamental right, the State need only show a rational basis for treating the two types of affidavits differently. *See Burlington Northern R. Co. v. Ford,* 504 U.S. 648, 651, 112 S.Ct. 2184, 119 L.Ed.2d 432 (1992).[3] The disparate treatment at issue here is little different from requiring a civil plaintiff to file a detailed petition but permitting a civil defendant to file a general denial. Requiring a criminal defendant's affidavits to meet more stringent requirements than required from the State's controverting affidavits may be a recognition that the defendant has the burden to justify a change of venue, a fairly extraordinary remedy. The State, on the other hand, merely needs to show that it is indeed contesting the issue; this requirement may simply be designed to prevent unnecessary hearings when the State has no objection to a change of venue. Moreover, the Legislature could have chosen not to require the State to produce affidavits at all, but simply to require the defendant to do so as a predicate for a hearing. There is no reason to believe that supporting and controverting affidavits necessarily serve the same purposes and hence no reason to believe that they must conform to the same requirements. Points of error three and four are overruled.

## 2. Voir dire

■ In point of error seven, appellant contends that the trial court erred in permitting the parties to exercise peremptory challenges at the end of voir dire—the procedure permitted for non-capital cases.[4] Because appellant requested the procedure followed, he can obtain relief only if the procedure for exercising peremptory challenges in a capital case is an "absolute requirement or prohibition" to be implemented regardless of the parties' wishes.

*See Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim.App.1993) (absolute requirements not subject to waiver); *Powell v. State,* 897 S.W.2d 307 (Tex.Crim.App.1994)(deliberateness special issue cannot be waived). We have previously held that the retroactive exercise of peremptory strikes by the State is subject to the rules of procedural default (i.e. error is defaulted absent objection). *Fearance v. State,* 771 S.W.2d 486, 496 n. 3 (Tex. Crim.App.1988), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *Barnard v. State,* 730 S.W.2d 703, 712 (Tex.Crim.App.1987), *cert. denied,* 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988). Under the procedure in the present case, both parties exercised all of the peremptory challenges retroactively. Although this practice varies from the statutory procedure for capital cases, *see Dowthitt v. State,* 931 S.W.2d 244, 251 (Tex.Crim.App. 1996), given our prior precedent, we find that the procedure controlling the order and timing of the exercise of peremptory challenges is not an absolute requirement. Hence, appellant waived any error by requesting the procedure followed in the present case. Point of error seven is overruled.

■ In point of error eight, appellant contends that he received ineffective assistance of counsel when his attorney requested and obtained the procedure for exercising peremptory challenges discussed in point of error seven. To prevail on a claim of ineffective assistance of counsel, the defendant must show (1) deficient performance, and (2) prejudice. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. A defendant must overcome

---

**3.** After overruling appellant's objection to the State's affidavits, the trial court conducted a hearing on the merits of the venue motion and ultimately determined that a change of venue was not required to protect appellant's right to a fair trial. Appellant does not challenge that determination.

**4.** In capital cases, peremptory challenges are to be exercised after the questioning of each individual prospective juror. Article 35.13.

the strong presumption that an attorney's actions were sound trial strategy. *Id.* Ordinarily, that presumption cannot be overcome absent evidence in the record of the attorney's reasons for his conduct. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994).

■ In the present case, appellant fails to point to any evidence showing the reasons for his attorney's decision to request the procedure for exercising peremptories that is normally used in non-capital cases. Moreover, we have recognized that the non-capital procedure offers a minor advantage over the procedure designated for capital cases: the ability to exercise peremptory challenges after looking at the venire as a whole. *Dowthitt,* 931 S.W.2d at 251. The attorney may have reasonably believed that, in the present case, this advantage outweighed the disadvantages of abandoning the procedure designated for capital cases. Point of error eight is overruled.

### 3. Motion to suppress

In points of error nine and ten, appellant contends that the trial court erred in denying his motion to suppress evidence from an allegedly illegal arrest and search. State Trooper Wayne Davis listened while the only surviving victim, Chris Kelley, was questioned by another police officer. Kelley identified the perpetrator as Jasen Busby. Kelley also stated that Busby shot him and the two other victims and that Busby drove away in Kelley's pickup truck. Kelley described his truck as a red Dodge four-wheel drive pickup. Trooper Davis relayed all of these facts on the police radio frequency. Patrolman Jesse Mayberry was briefed on the contents of this radio dispatch before starting his shift.

Mayberry subsequently spotted a pickup truck fitting the description. He stopped the truck and asked the driver for identification. The driver gave Mayberry identification showing that the driver was Jasen Busby. Mayberry asked appellant to step out of the car, patted appellant down, and felt a bulge in appellant's clothing. Mayberry asked appellant what the bulge was, and appellant replied that it was bullets. Mayberry subsequently retrieved the bulge, which he found to be a clip with bullets. At that time Mayberry handcuffed appellant and waited for other officers to arrive at the scene. Appellant was subsequently interrogated and the truck was searched. Mayberry did not have a warrant for Busby's arrest.

Appellant first contends that he was arrested in violation of the Fourth Amendment and Texas statutory law. Appellant claims that an arrest occurred after Mayberry handcuffed him and detained him pending the arrival of other officers. We will assume, without deciding, that an arrest occurred at that point. The record shows that Mayberry had probable cause to arrest. However, appellant contends that the arrest was illegal because it was not supported by a warrant.

■ The Fourth Amendment requires an arrest warrant only when the arrest occurs in the suspect's home. *Anderson v. State,* 932 S.W.2d 502, 506 (Tex.Crim.App.1996), *cert. denied,* U.S. , — U.S. ——, 117 S.Ct. 2517, 138 L.Ed.2d 1019 (1997)(citing *New York v. Harris,* 495 U.S. 14, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990)). Appellant was not arrested in his home but on a public highway.

■ As for appellant's statutory challenge, we find that the warrantless arrest was legitimately made under Article 14.04. That article, known as the felony/escape rule, states:

Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without a warrant, pursue and arrest the accused.

Article 14.04. Although we have held that the felony/escape rule is not satisfied merely by proof that a suspect travels from one place to another, we have also stated that "[t]he escape requirement is obviously met where the suspect has previously fled." *Dowthitt*, 931 S.W.2d at 259 (citing *Fearance*, 771 S.W.2d at 510). Here, the evidence available to the police shows that appellant had fled the scene of the crime in the surviving victim's pickup truck. The surviving victim relayed the crime and appellant's flight to law enforcement officials. Mayberry clearly had satisfactory proof that appellant had committed a felony and had already fled the scene of the crime. That evidence, in turn, was satisfactory proof that appellant was about to escape.

Appellant also argues that searches of his person, of a passenger, and of the truck were illegal because they were conducted without a warrant. However, because appellant was validly arrested, the search of his person was proper as incident to an arrest. *New York v. Belton*, 453 U.S. 454, 459, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Because the truck was stolen, appellant had no standing to object to a search of that vehicle. *Hughes v. State*, 897 S.W.2d 285, 305 (Tex.Crim.App.1994). And appellant has no standing to complain of the search of the passenger because the Fourth Amendment does not confer standing to challenge the search of a third party. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

Finally, appellant adopts all of the above arguments to support his contention that the arrest and searches violate Article I § 9 of the Texas Constitution. But appellant does not contend that Article I § 9 provides different protections than the Fourth Amendment; in fact, he contends that the constitutional provisions are identical in all material aspects. Hence, having resolved his Fourth Amendment claims, we need not separately address his state constitutional claims. *See Ramos v. State*, 934 S.W.2d 358, 362 n. 5 (Tex.Crim.

App.1996), *cert. denied*, U.S. , 520 U.S. 1198, 117 S.Ct. 1556, 137 L.Ed.2d 704 (1997). Points of error nine and ten are overruled.

### 4. Experts

In supplemental point of error one, appellant complains about the trial court's refusal to proceed *ex parte* concerning appellant's requests for the appointment of a jury consultant and a substance abuse expert. Appellant contends that the trial court's refusal to conduct an *ex parte* hearing violated the work product privilege and denied him due process because the State was permitted to learn defensive theories during the adversarial hearing. However, appellant made no request to proceed *ex parte* concerning his request for a jury consultant. Hence, as to the jury consultant, appellant failed to preserve error. Texas Rule of Appellate Procedure 52(a)(1996)(currently Rule 33.1(a)(1)).

As to the drug abuse expert, we find that the hearing did not reveal any material, new information to the State. Appellant requested an *ex parte* hearing in a written motion that was *served upon the state*. In that motion, appellant outlined his reasons for desiring the appointment of a drug abuse expert. The trial court had previously appointed a psychologist and a psychiatrist to assist in appellant's defense. At the hearing, the parties simply explored whether either of the expert witnesses already appointed for appellant possessed sufficient qualifications to serve as a drug abuse expert. The parties did not delve into the nature of the drug abuse testimony appellant wished to offer at trial. And appellant's previously-appointed expert witnesses were not questioned about any testimony they intended to offer or about any other matter that could be classified as work product. Supplemental point of error one is overruled.

In point of error five, appellant contends that the trial court erred in denying his request for the appointment of a jury con-

sultant. In point of error six, he contends that the trial court erred in denying his request for the appointment of a substance abuse expert.

■ The Due Process Clause of the Fourteenth Amendment requires an expert witness to be appointed to an indigent defendant if the appointment of the expert is necessary "to provide [the defendant] with the basic tools to present his defense within our adversarial system." *Rey v. State*, 897 S.W.2d 333, 337 (Tex.Crim.App.1995)(citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). However, the State need not "purchase for an indigent defendant all the assistance that his wealthier counterparts might buy." *Id.*(quoting *Ake*, 470 U.S. at 77, 105 S.Ct. 1087). The key question appears to be whether there is a high risk of an inaccurate verdict absent the appointment of the requested expert. *Id.*

■ We conclude that a jury consultant is not a "basic" tool of the defense. Selecting a jury is part of an attorney's stock-in-trade. Although a jury-selection expert's assistance would no doubt be helpful in nearly every case, such assistance is a luxury, not a necessity.

■ As for the drug abuse expert, we find that the psychiatrist appointed for appellant was well qualified to assist appellant and testify as a drug abuse expert. The psychiatrist in question was Dr. David Self. As a psychiatrist, he was necessarily a medical doctor. Moreover, Dr. Self was the clinical director of Rusk State Hospital, a hospital within the Texas Department of Health and Mental Retardation. As clinical director, he was responsible for all of the psychiatrists at the hospital. At the hearing, Self testified that the psychiatric staff frequently dealt with individuals who had substance abuse problems. And Dr. Self's educational background included training in the area of substance abuse. When the trial judge asked Dr. Self if, during the course of his training, he had an opportunity to meet "a lot of folks that were substance abusers," Self replied, "Yes, sir, it's a fairly epidemic problem in my area." And, when the trial judge asked if the doctor was "not without some expertise in your training in years' past?", Dr. Self replied, "Some degree of it, yes, sir, it's a fairly requisite." Dr. Self did testify that he possessed less knowledge and expertise than would a person who specializes in drug abuse.

In his motion appellant outlined the need for a drug abuse expert to testify about: the ability to understand *Miranda*[5] warnings, on whether the defendant knowingly, intelligently, and voluntarily waived his rights, the defendant's capacity to form criminal intent, and the effect of substance abuse on the special issues of deliberateness, future dangerousness, and mitigation. We conclude that the trial court could have reasonably found that Dr. Self could adequately assist appellant as a drug abuse expert with regard to those issues, and hence, the appointment of an additional drug abuse expert was unnecessary. Points of error five and six are overruled.

### 5. Parole eligibility

In point of error two, appellant contends that the trial court erred in refusing to submit an instruction informing the jury when appellant would become eligible for parole with a life sentence. He cites the Eighth and Fourteenth Amendments to the United States Constitution, Article I §§ 13 and 19 of the Texas Constitution, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Primarily, he relies upon the Supreme Court decision in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). We have repeatedly decided these contentions adversely to appellant's position. *Colburn v. State*, 966 S.W.2d 511, 516–517 (Tex. Crim.App.1998); *Curry v. State*, 910

**5.** *Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.* 1602, 16 L.Ed.2d 694 (1966).

S.W.2d 490, 497 (Tex.Crim.App.1995). Point of error two is overruled.

### 6. Constitutionality of the death penalty

In point of error one, appellant provides a laundry list of contentions on why the current death penalty scheme is unconstitutional. All of these contentions have been decided adversely to his position. He complains that the term "probability" in the future dangerousness special issue is not defined.[6] We rejected that claim in *Camacho v. State*, 864 S.W.2d 524, 536 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). He claims that the mitigation special issue[7] impermissibly shifts the burden of proof on mitigating circumstances. We rejected that claim in *Matchett v. State*, 941 S.W.2d 922, 935 (Tex.Crim.App.1996), *cert. denied*, U.S. 521 U.S. 1107, 117 S.Ct. 2487, 138 L.Ed.2d 994 (1997). He argues, relying upon *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), that the mitigation special issue impermissibly shifts the burden of proof on aggravating circumstances. We rejected that claim in *Williams v. State*, 937 S.W.2d 479, 491 (Tex.Crim.App.1996). He contends that the mitigation issue is unconstitutional because the open-ended and unstructured nature of the issue gives the jury unfettered discretion. We rejected that claim in *King v. State*, 953 S.W.2d 266, 274 (Tex.Crim.App.1997). He contends that the mitigation issue's failure to enumerate a list of mitigating and aggravating factors prevents meaningful appellate review. We rejected that claim in *Green v. State*, 934 S.W.2d 92, 107 (Tex. Crim.App.1996), *cert. denied*, U.S. , 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). He complains that the mitigation special issue is unconstitutional because it limits mitigating factors to those that evidence moral blameworthiness.[8] We rejected that claim in *King*, 953 S.W.2d at 274. And finally, he contends that the failure to inform a jury that a holdout vote (or hung jury) results in the automatic imposition of a life sentence violates the Eighth and Fourteenth Amendments to the United States Constitution.[9] We rejected that claim in *Eldridge v. State*, 940 S.W.2d 646, 650 (Tex.Crim.App.1996). Point of error one is overruled.

The judgment of the trial court is affirmed.

---

JOHNSON, J. delivered a concurring opinion, in which MEYERS, and PRICE, JJ. joined.

JOHNSON, J., delivered a concurring opinion in which MEYERS and PRICE, JJ., joined.

I concur in the judgment of the Court that the trial court did not abuse its discre-

---

6. That issue asks: "whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Article 37.071 § 2(b)(1).

7. That issue asks:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's moral character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.
Article 37.071 § 2(e).

8. The statute provides:

(f) The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:
. . .
(4) shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness.
Article 37.071 § 2(f)(4).

9. The statute provides:

The court, the attorney representing the state, the defendant, or the defendant's counsel may not inform the juror or a prospective juror of the effect of a failure of the jury to agree on issues submitted under Subsection (c) or (e) of this article.
Article 37.071 § 2 (last sentence).

tion in denying change of venue. I write to emphasize that the holding is firmly rooted in the words of the statute.[1] The majority bases its decision on *Cockrum v. State,* 758 S.W.2d 577 (Tex.Crim.App. 1988), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989), and states that the state's affiants, because of their personal belief that appellant could receive a fair trial in Cherokee County, could "infer from [their] belief ... that the appellant's affiants must necessarily lack adequate means of knowledge with regard to their statements that appellant cannot receive a fair trial." Ante, at 267. The Cockrum court adopted the reasoning in *Lundstrom v. State,* 742 S.W.2d 279 (Tex.Crim.App.1987)(opinion on reh'g).[2] The Lundstrom court stated that the state "may successfully controvert by means of a general denial of the 'credibility ' or 'means of knowledge' of the defendant's compurgators, or it may, as in the instant case, generally deny that there exists 'so great a prejudice against' the defendant or a 'dangerous combination against' the defendant so that 'he cannot expect a fair trial.' " Id. at 286. Lundstrom points out that the text of the statute has remained essentially unchanged since its original passage in 1879, and that as early as 1888 this Court said, "To show that such prejudice did not exist manifestly tends most strongly to prove that they did not possess correct means of ascertaining the truth of the matter."*Meuly v. State,* 26 Tex.App. 274, 9 S.W. 563, 564 (1888). The Cockrum Court said of the holding in Lundstrom, "By implication, that holding necessarily stands for the proposition that evidence which indicates that an appellant can receive a fair trial, if believed by the trial judge, is sufficient to defeat a motion for change of venue." *Cockrum* at 583–84. Cockrum was in agreement with the prior cases, which held that controverting evidence is, in fact, an attack on the means of knowledge although in direct, but it also acknowledged that the standard of attack on credibility through personal knowledge is impractical in modern settings. "In today's more urban settings, it is sufficient for the State to merely present controverting evidence concerning the potential for a fair trial. It is no longer reasonable to expect the State to find compurgators who have actual knowledge of a defendant's compurgators and their basis for knowledge" Id. at 583.[3] While the attack on credibility of a compurgator may have been eroded by time as an appropriate measure of determining prejudice, an attack on the means of knowledge, directly or indirectly, is still a valid measure.

The facts in *Cockrum* are very similar to the facts here. In *Cockrum,* the state's affiants were both local newspapermen. *Cockrum,* 758 S.W.2d at 582. They both signed form affidavits which facially satisfied TEX.CODE CRIM. PROC. art. 31.04. *Id.* During the hearing, the state's affiants admitted that they did not know appellant's affiants and could not say that appellant's affiants were "prejudiced to said Defendant and their means of knowledge are not sufficient to support and justify the statements" of the affiants. *Id.* While effectively disavowing their affidavits, they also testified that they believed that appellant could receive a fair trial. *Id.* at 584. Cross-examination of appellant's affiants "cast some doubt on the validity of those

---

1. Article 31.04 Motion May Be Controverted. The credibility of the persons making affidavit for change of venue, or their means of knowledge, may be attacked by the affidavit of a credible person. The issue thus formed shall be tried by the judge, and the motion granted or refused, as the law and facts shall warrant. TEX.CODE CRIM. PROC. art. 31.04.

2. On rehearing, the majority adopted the dissenting opinion on original submission. Appellant Lundstrom filed five affidavits alleging inability to obtain a fair trial. The State filed a motion alleging that appellant could receive a fair trial and supported the motion with five affidavits of its own.

3. Personal knowledge of the defendant's compurgators is not required by the language of art. 31.04.

witnesses' opinions." *Id.* The state offered actual newspaper articles as exhibits. *Id.* We noted that the hearing on change of venue was held after voir dire, "giving the trial judge an additional barometer of community climate." *Id.* Citing *Lundstrom,* we held that it is no longer reasonable to require the state to find affiants to directly challenge the credibility of other affiants: "In today's more urban settings, it is sufficient for the State to merely present controverting evidence concerning the potential for a fair trial. It is no longer reasonable to expect the State to find compurgators who have actual knowledge of a defendant's compurgators and their basis for knowledge." *Id.* at 583. The Court went on to say that, in such circumstances, the trial court did not abuse its discretion by denying the change of venue. *Id.* at 584.

In this case, the state's form affidavits facially satisfied TEX.CODE CRIM. PROC. Art. 31.04. The state offered local newspaper articles as exhibits. There was a hearing on change of venue at which the state's affiants, both local law enforcement officers, disavowed their affidavits. Each affiant went on to testify that he had lived in the county at the time of two prior capital murder cases, that a fair and impartial jury had been seated in each case despite intense pretrial publicity, and that in appellant's case the levels of publicity, public concern, and public interest were all significantly lower than for the other capital cases. Both testified that, in their opinion, appellant could receive a fair trial in Cherokee County (S.F. vol.XV, at 206-231).

Under *Lundstrom* and *Cockrum,* the state presented sufficient controverting evidence to permit a rational finder of fact to determine that no change of venue was necessary. There is no showing of abuse of discretion.