IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1054-07







SHELDON ROBERTS, Appellant


v.


THE STATE OF TEXAS






ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FROM THE SIXTH COURT OF APPEALS

DALLAS COUNTY




 Price, J., filed a concurring opinion in which Womack, J., joined.


CONCURRING OPINION


 In Lawrence v. State, (1) we made it clear that, in order to obtain a conviction under the
multiple-victims theory of capital murder where the victims are a mother and her unborn
child, a defendant must have specifically intended to cause the deaths of both mother and
child. We said:

 Under the Texas Penal Code, a person commits capital murder if he
intentionally or knowingly causes the death of "more than one person . . .
during the same transaction." A "person" includes an "individual." The Penal
Code in turn defines an "individual" as "a human being who is alive, including
an unborn child at every stage of gestation from fertilization to birth." It
follows from these provisions that a person who intentionally or knowingly
causes the death of a woman and her unborn child, at any stage of gestation,
commits capital murder. (2)


The question before us in this case is whether it is legally permissible to say that the appellant
intentionally or knowingly killed Ramirez's gestating baby when, so far as the evidence
reveals, he had no knowledge that she was even pregnant.

 In Norris v. State, (3) the Court expressly held that the statutory doctrine of transferred
intent may be applied to obtain a conviction under the multiple-victims theory of capital
murder. (4) Presumably this means that the State was entitled to rely upon Section 6.04(b)(2)
of the Penal Code to convict the appellant in this case. (5) Section 6.04(b)(2) reads:

 A person is nevertheless criminally responsible for causing a result if the only
difference between what actually occurred and what he desired, contemplated,
or risked is that . . . a different person . . . was injured, harmed, or otherwise
affected. (6)


Nothing in the plain language of this provision requires the State to prove that the appellant
was aware of or even knew of the existence of the "different person" whose injury he may
inadvertently have caused while intending to injure someone else. He may be prosecuted
under a theory of transferred intent whether he knew of the existence of the person he actually
harmed or not, so long as he had the requisite intent to harm someone. Having intended to
cause the death of Ramirez, consistent with our holding in Norris, the appellant can be found
liable for murder for having caused the death or her unborn child, regardless of whether he
was aware that the child even existed. Liable in this way for both the murder of Ramirez and
the murder of her unborn child, the appellant can be found guilty of multiple-victims capital
murder--again, at least under our express holding in Norris.

 I do not agree that a defendant who intentionally or knowingly causes the death of his
intended victim should also be liable for the murder of another victim whom, by the same act,
he also killed, albeit inadvertently. I do not think that the plain language of Section
6.04(b)(2) accommodates the double use of a single specific intent to elevate two homicidal
results, flowing from a single act, to the level of full-blown murder. (7) Accordingly, I would
likely have joined that part of Judge Clinton's concurring opinion in which he said:

 Where the meaning of a statutory provision is plain on its face, we are obliged
to effectuate that meaning unless to do so leads to absurd results. Boykin v.
State, 818 S.W.2d 782, at 785 (Tex.Cr.App.l991). On its face § 6.04(b)
applies only when there is a "difference between what actually occurred and
what [the accused] desired, contemplated or risked[.]" It deems an accused
"criminally responsible" to a level commensurate with the offense he "desired,
contemplated or risked" whenever "the only difference between" that offense
and "what actually occurred" is that "a different offense was committed" or "a
different person or property was injured, harmed, or otherwise affected."
Section 6.04(b) does not provide, however, that if "what actually occurred" was
both the offense "desired, contemplated, or risked" and an additional offense
that was not specifically intended, then the State may prosecute the accused for
the unintended offense at the same level of criminal responsibility at which it
will also prosecute him for "the desired, contemplated or risked" offense. The
provision does not speak of "additional" offenses, but of "different" ones.


 Nor does this plain reading of § 6.04(b) reap absurd results. The
Legislature may well have intended that in a multiple homicide situation, where
the killer only intentionally or knowingly caused the death of one of his
victims, the killer should be prosecuted dually for murder and some other lesser
homicide, but not for capital murder. Surely it is not hard to credit a legislative
judgment that such a scenario does not call for the most extreme remedy at its
disposal. (8)


For these reasons I disagree with the Court's holding in Norris.

 To my way of thinking, the Norris holding was "poorly reasoned" and "flawed from
the outset." (9) True, "[t]he interests underlying the doctrine of stare decisis are at their height
for judicial interpretations of legislative enactments upon which parties rely for guidance in
attempting to conform to those legislative enactments." (10) However, my research does not
reveal a single case, from the time we first decided Norris in 1995 to the present, in which the
State has ever invoked Norris to uphold an otherwise unsustainable murder conviction, much
less a capital murder conviction. I perceive no reliance interest weighty enough as to justify
a conclusion that rote consistency should overcome right interpretation. (11) I therefore vote to
overrule Norris.

 With these additional observations, I join the Court's opinion.


Filed: December 17, 2008

Publish
1. 240 S.W.3d 912 (Tex. Crim. App. 2007).
2. Id. at 915 (footnotes omitted). See Tex. Penal Code §§ 1.07(a)(26), 1.07(a)(38),
19.02(b)(1) and 19.03(a)(7)(A).
3. 902 S.W.2d 428 (Tex. Crim. App. 1995).
4. Immediately after acknowledging that the multiple-victim theory of capital murder requires
proof of "two or more intentional or knowing murders[,]" the Court in Norris continued:


 The plain language of Section 6.04(b)(2) [of the Penal Code--our transferred
intent provision] evinces a legislative policy to make a defendant, who, like appellant,
acts with specific intent to kill, criminally responsible for the consequences of his
voluntary acts. And, this Court has held Section 6.04(b)(2) can be applied to
establish a Section 19.02(a)(1) [now 19.02(b)(1)] murder. See Aguirre v. State, 732
S.W.2d 320, 326 (Tex. Crim. App. 1982) (op. on reh'g). Therefore, since Section
19.03(a)(6)(A) [now Section 19.03(a)(7)(A)] incorporates two or more Section
19.02(a)(1) murders and Section 6.04(b)(2) can be used to establish a Section
19.02(a)(1) murder, . . . we hold Section 6.04(b)(2) applies to a Section
19.03(a)(6)(A) capital murder prosecution.


Id. at 437-8. In essence, the Court thus opened the door to allow the State to apply the law of
transferred intent to extract two murders from a single act that caused the death of both the intended
victim and an unintended victim, and thereby sustain a conviction for capital murder under the
multiple-victims theory of that offense.
5. Tex. Penal Code § 6.04(b)(2).
6. Id.
7. When an actor intentionally causes the death of his intended victim and, by the same act,
recklessly or negligently causes the death of another, unintended victim, then as far as I am
concerned he may be prosecuted both for the murder of his intended victim and the manslaughter or
negligent homicide of his unintended victim. Texas Penal Code §§ 19.04 and 19.05. But, for
reasons given in the text immediately post, I do not believe a plain reading of the transferred intent
statute allows for the actor's prosecution for two full-blown murders under Section 19.02(b)(1) of
the Penal Code, much less for capital murder under Section 19.03(a)(7)(A). 
8. Norris v. State, supra at 450-51 (Clinton, J., concurring).
9. See, e.g., Paulson v. State, 28 S.W.3d 570, 571-72 (Tex. Crim. App. 2000) ("if we conclude
that one of our previous decisions was poorly reasoned or is unworkable, we do not achieve [the]
goals [of stare decisis] by continuing to follow it"); Hammock v. State, 46 S.W.3d 889, 893 (Tex.
Crim. App. 2001) (one factor favoring overruling precedent is "when the original rule of law is
flawed from the outset").
10. Busby v. State, 990 S.W.2d 263, 267 (Tex. Crim. App. 1999).
11. See id. ("The doctrine of stare decisis indicates a preference for maintaining consistency
even if a particular precedent is wrong.") I regard this "preference" as a rebuttable presumption. See
State v. Colyandro, 233 S.W.3d 870, 886-87 (Tex. Crim. App. 2007) (Price, J., concurring).