

**IN THE COURT OF CRIMINAL APPEALS**
**OF TEXAS**

**NO. PD-1054-07**

**SHELDON ROBERTS, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**
**FROM THE SIXTH COURT OF APPEALS**
**DALLAS COUNTY**

PRICE, J., filed a concurring opinion in which WOMACK, J., joined.

## CONCURRING OPINION

In *Lawrence v. State*,[1] we made it clear that, in order to obtain a conviction under the

multiple-victims theory of capital murder where the victims are a mother and her unborn

child, a defendant must have specifically intended to cause the deaths of both mother and

child. We said:

> Under the Texas Penal Code, a person commits capital murder if he
> intentionally or knowingly causes the death of "more than one person . . .

---

[1] 240 S.W.3d 912 (Tex. Crim. App. 2007).

during the same transaction." A "person" includes an "individual." The Penal Code in turn defines an "individual" as "a human being who is alive, including an unborn child at every stage of gestation from fertilization to birth." It follows from these provisions that a person who intentionally or knowingly causes the death of a woman *and her unborn child*, at any stage of gestation, commits capital murder.[2]

The question before us in this case is whether it is legally permissible to say that the appellant intentionally or knowingly killed Ramirez's gestating baby when, so far as the evidence reveals, he had no knowledge that she was even pregnant.

In *Norris v. State*,[3] the Court expressly held that the statutory doctrine of transferred intent may be applied to obtain a conviction under the multiple-victims theory of capital murder.[4] Presumably this means that the State was entitled to rely upon Section 6.04(b)(2)

---

[2] *Id.* at 915 (footnotes omitted). *See* TEX. PENAL CODE §§ 1.07(a)(26), 1.07(a)(38), 19.02(b)(1) and 19.03(a)(7)(A).

[3] 902 S.W.2d 428 (Tex. Crim. App. 1995).

[4] Immediately after acknowledging that the multiple-victim theory of capital murder requires proof of "two or more intentional or knowing murders[,]" the Court in *Norris* continued:

> The plain language of Section 6.04(b)(2) [of the Penal Code—our transferred intent provision] evinces a legislative policy to make a defendant, who, like appellant, acts with specific intent to kill, criminally responsible for the consequences of his voluntary acts. And, this Court has held Section 6.04(b)(2) can be applied to establish a Section 19.02(a)(1) [now 19.02(b)(1)] murder. See *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982) (op. on reh'g). Therefore, since Section 19.03(a)(6)(A) [now Section 19.03(a)(7)(A)] incorporates two or more Section 19.02(a)(1) murders and Section 6.04(b)(2) can be used to establish a Section 19.02(a)(1) murder, . . . we hold Section 6.04(b)(2) applies to a Section 19.03(a)(6)(A) capital murder prosecution.

*Id.* at 437-8. In essence, the Court thus opened the door to allow the State to apply the law of transferred intent to extract two murders from a single act that caused the death of both the intended

of the Penal Code to convict the appellant in this case.[5]   Section 6.04(b)(2) reads:

> A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that . . . a different person . . . was injured, harmed, or otherwise affected.[6]

Nothing in the plain language of this provision requires the State to prove that the appellant was *aware of* or even *knew of the existence of* the "different person" whose injury he may inadvertently have caused while intending to injure someone else.  He may be prosecuted under a theory of transferred intent whether he knew of the existence of the person he actually harmed or not, so long as he had the requisite intent to harm *someone*.  Having intended to cause the death of Ramirez, consistent with our holding in *Norris*, the appellant can be found liable for murder for having caused the death or her unborn child, regardless of whether he was aware that the child even existed.  Liable in this way for both the murder of Ramirez *and* the murder of her unborn child, the appellant can be found guilty of multiple-victims capital murder—again, at least under our express holding in *Norris*.

I do not agree that a defendant who intentionally or knowingly causes the death of his intended victim should also be liable for the murder of another victim whom, by the same act, he also killed, albeit inadvertently.  I do not think that the plain language of Section

victim and an unintended victim, and thereby sustain a conviction for capital murder under the multiple-victims theory of that offense.

[5]   TEX. PENAL CODE § 6.04(b)(2).

[6]   *Id*.

6.04(b)(2) accommodates the double use of a single specific intent to elevate two homicidal

results, flowing from a single act, to the level of full-blown murder.[7] Accordingly, I would

likely have joined that part of Judge Clinton's concurring opinion in which he said:

> Where the meaning of a statutory provision is plain on its face, we are obliged
> to effectuate that meaning unless to do so leads to absurd results. *Boykin v.
> State,* 818 S.W.2d 782, at 785 (Tex.Cr.App.l991). On its face § 6.04(b)
> applies only when there is a "difference between what actually occurred and
> what [the accused] desired, contemplated or risked[.]" It deems an accused
> "criminally responsible" to a level commensurate with the offense he "desired,
> contemplated or risked" whenever "the only difference between" that offense
> and "what actually occurred" is that "a different offense was committed" or "a
> different person or property was injured, harmed, or otherwise affected."
> Section 6.04(b) does *not* provide, however, that if "what actually occurred" was
> *both* the offense "desired, contemplated, or risked" *and an additional* offense
> that was not specifically intended, then the State may prosecute the accused for
> the unintended offense at the same level of criminal responsibility at which it
> will *also* prosecute him for "the desired, contemplated or risked" offense. The
> provision does not speak of "additional" offenses, but of "different" ones.
>
> Nor does this plain reading of § 6.04(b) reap absurd results. The
> Legislature may well have intended that in a multiple homicide situation, where
> the killer only intentionally or knowingly caused the death of one of his
> victims, the killer should be prosecuted dually for murder and some other lesser
> homicide, but not for capital murder. Surely it is not hard to credit a legislative
> judgment that such a scenario does not call for the most extreme remedy at its
> disposal.[8]

---

[7]

   When an actor intentionally causes the death of his intended victim and, by the same act,
recklessly or negligently causes the death of another, unintended victim, then as far as I am
concerned he may be prosecuted both for the murder of his intended victim and the manslaughter or
negligent homicide of his unintended victim. TEXAS PENAL CODE §§ 19.04 and 19.05. But, for
reasons given in the text immediately *post*, I do not believe a plain reading of the transferred intent
statute allows for the actor's prosecution for two full-blown *murders* under Section 19.02(b)(1) of
the Penal Code, much less for capital murder under Section 19.03(a)(7)(A).

[8]

   *Norris v. State*, *supra* at 450-51 (Clinton, J., concurring).

For these reasons I disagree with the Court's holding in *Norris*.

To my way of thinking, the *Norris* holding was "poorly reasoned" and "flawed from the outset."[9] True, "[t]he interests underlying the doctrine of *stare decisis* are at their height for judicial interpretations of legislative enactments upon which parties rely for guidance in attempting to conform to those legislative enactments."[10] However, my research does not reveal a single case, from the time we first decided *Norris* in 1995 to the present, in which the State has ever invoked *Norris* to uphold an otherwise unsustainable murder conviction, much less a capital murder conviction. I perceive no reliance interest weighty enough as to justify a conclusion that rote consistency should overcome right interpretation.[11] I therefore vote to overrule *Norris*.

With these additional observations, I join the Court's opinion.

Filed:          December 17, 2008
Publish

---

[9]

*See, e.g., Paulson v. State*, 28 S.W.3d 570, 571-72 (Tex. Crim. App. 2000) ("if we conclude that one of our previous decisions was poorly reasoned or is unworkable, we do not achieve [the] goals [of *stare decisis*] by continuing to follow it"); *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001) (one factor favoring overruling precedent is "when the original rule of law is flawed from the outset").

[10]

*Busby v. State*, 990 S.W.2d 263, 267 (Tex. Crim. App. 1999).

[11]

*See id*. ("The doctrine of *stare decisis* indicates a preference for maintaining consistency even if a particular precedent is wrong.") I regard this "preference" as a rebuttable presumption. *See State v. Colyandro*, 233 S.W.3d 870, 886-87 (Tex. Crim. App. 2007) (Price, J., concurring).