02-10-070 & 071-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00070-CR

NO. 02-10-00071-CR

 

 

 


 
 
 MarK GREGORY OWENS
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 43RD DISTRICT Court OF pARKER
COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

In six
points, Appellant Mark Gregory Owens appeals the trial court’s judgments
convicting him of possession of child pornography and aggravated sexual assault
of a child.  We affirm.

II. 
Factual and Procedural Background

The
State charged Owens with possession of child pornography and aggravated sexual assault
of a child and sought to enhance punishment on both charges with prior felony
convictions.  The trial court consolidated the cases.

The
evidence at trial reflected that Owens had moved in with his niece Megan and
Megan’s two-year-old child H.G. in October 2008, after his daughter Kristie
moved to Florida.  Kristie left her two-year-old child K.L. with Kristie’s
mother, and K.L. would stay with Owens on the weekends.  

On
October 31, 2008, Megan took H.G. trick-or-treating.  At some point either that
day or the next, she and Owens spoke about Halloween and about H.G.’s and
K.L.’s costumes.  Owens handed his cell phone to Megan to show her some photos
of K.L. wearing a Cinderella costume.  But Megan flipped too far through
Owens’s cell phone photos and saw a photo of “[a] little girl with her legs
open” and a man wearing pink panties, with his penis on the little girl’s
vagina.  She could not see the little girl’s face, and she did not know if the
photo was of her daughter or K.L.  Megan testified that she was in shock and
that she just closed the phone and gave it back to Owens, who was standing
across from her and could not see what she had seen.

The
next day, while Owens was bathing K.L., Megan picked up his phone from the
coffee table in the living room and looked through his photos again to confirm
what she had seen.  She saw the original photo and two more like it, then woke
her boyfriend, took H.G., and went to her mother’s house.  Megan told her mother
and stepfather what she had seen, and they called the police.  Megan’s mother,
Megan, and H.G. went to a park near Megan’s house to meet the police.  Megan’s
stepfather, George Green, went to Megan’s house by himself because he worried
that Owens might leave before the police could arrive.

George
stalled Owens, chatting, until the police arrived.  Corporal Rusty Arnold of
the Parker County Sheriff’s Office knocked on the door, told Owens that the
police were there because of allegations that he was in possession of a phone
containing child pornography, and asked Owens where his cell phone was.  Owens first
said that he had loaned his phone to his brother, who was in Dallas, but after
the corporal told him that they would detain him until a search warrant could be
obtained for the phone, Owens said, “Okay.  My phone’s in here.  It’s been shut
off.  It hasn’t worked in a long time.”  Corporal Arnold testified that he
explained to Owens that he and another officer would be escorting him inside
the residence, and the corporal explained at trial that they did this to
preserve the evidence by preventing Owens from deleting any photos from the
phone. 

Owens
went into the kitchen, removed a phone from a drawer, and gave it to the officers.
 Owens told the officers that they could look through the phone, although he
later refused to sign a consent-to-search form for it, and an officer took the
phone outside.  Corporal Arnold said that this phone did not match the
description of the phone that Megan had given him.  Megan and her mother were
waiting outside when a deputy emerged from the house with a cell phone.  Megan
told the deputy that the phone he held was not Owens’s phone with the photos
but rather one that she kept in the kitchen junk drawer because it did not
work.

George
testified that Owens’s phone was in plain sight in the living room, resting on
the end table next to where George sat and that while Owens was in the kitchen
with the deputy, Owens turned his body so that the deputy could not see his
face and motioned to George to take the phone, mouthing, “My phone . . .
take my phone and leave.”  George said, “[I]t was clear that he wanted me to
take the phone.”  Then Owens asked if George could leave, and the deputy said, “Yes.”
 George grabbed the phone from the end table as if it was his and walked
outside.

Once
outside, George handed Owens’s phone to Corporal Arnold, who was talking with
Megan.  The jury heard an audio recording taken immediately after George left
the house with the phone, in which George told Corporal Arnold that Owens had
motioned for him to take the phone and to break it.  At some point, George or
Megan told the police that the phone George gave to Corporal Arnold was the one
containing the photos. 

When
Investigator Sammy Slatten arrived, Corporal Arnold released the phones to him
and told him how he had obtained them.  Investigator Slatten took both phones
back inside the house and asked Owens if the phone that he had given to the
police was his phone.  Owens said, “Yes.”  When Investigator Slatten next asked
whether the other phone—the one George had given to the police—was his, Owens
said, “No.”

Investigator
Slatten testified that Megan described to him the photos she had seen, which
phone they were on, and whose phone it was.  Investigator Slatten asked Megan
“to go to the photograph that she had observed so that [he] could physically
see the photograph that she had observed,” and she did so.

Outside
the jury’s presence, Investigator Slatten testified that when he made the
decision to look at the phone, it was his understanding that Owens was saying, “That
phone is not mine,” and that Owens had told George to take the phone and to
break it.  Investigator Slatten said that he had some doubt—albeit, not much—as
to whether the phone in question was actually Owens’s.  Owens moved to suppress
the photos found during the search of his phone, and the trial court denied
this motion. 

Before
the jury, Investigator Slatten admitted that he did not have a search warrant or
Owens’s consent when he viewed the images on the phone, and he admitted that
nothing prevented him from getting a search warrant before he looked at the
phone’s contents.  He secured a search warrant for the phone before Detective Troy
Lawrence performed a forensic examination of it.  Investigator Slatten stated to
the jury that Owens had denied that the phone was his, that he had been told
that Owens told George to take the phone and break it, and that Megan was the
one who scrolled through the phone to show him the photos.  Investigator
Slatten agreed that Owens was inside the house, in the custody of either
Corporal Arnold or Sergeant King or both when he viewed the photos.  Corporal
Arnold testified that Investigator Slatten did not tell him to put Owens under
arrest until after Investigator Slatten viewed the photos on the phone. 

Megan
testified that besides the photo of the man’s penis touching the little girl’s genitals,
the phone also contained a photo of “a man with his pants down and a baby laying
on top of him with her clothes off.  And the other was just a baby naked with
her legs open.  And it didn’t show a face or anything,” just a close-up of the
little girl’s genitals.  All three photos focused on the genital area. Megan
clarified that by “baby,” she meant a child with the size and shape of a two-year-old.
 Investigator Slatten described the same photos that Megan described,
clarifying that the photo of the nude male with the nude toddler straddling him
appeared to have been taken in a mirror,[2] and adding that the phone
also had a photo of a toddler in a Halloween princess dress.  Megan told
Investigator Slatten that the three pornographic photos appeared to have been
taken in Owens’s bedroom.

Detective
Lawrence performed the forensic examination of Owens’s phone, and State’s
Exhibits 13 through 17 were admitted through his testimony.[3]
Detective Lawrence testified that the photos of the child wearing a Cinderella
costume and the sexually explicit photos of the naked female child were taken with
Owens’s phone, and the last Cinderella photo was taken within thirty-seven
minutes of the first of the child pornography photos.  The other two child
pornography photos were taken just a few minutes later—all of them were taken within
six minutes of each other.

Investigator
Slatten interviewed Owens on November 2, 2008, after Owens was arrested, and he
interviewed Owens again the next day.  The trial court denied Owens’s motion to
suppress his statements made during his interviews, admitted portions of these
recorded statements as State’s Exhibits 8 and 9 over Owens’s objections, and
allowed them to be published to the jury. 

State’s
Exhibit 8 began taping at 5:45 p.m. and ended around an hour later.  Owens
entered the interview room in jail clothes.  Investigator Slatten read Owens
his rights while Owens read along and initialed each to show that he understood
each one.  After Owens received his warnings, he asked the investigator for
something to drink, and Investigator Slatten got some water for him.  Owens
waived his rights and told the investigator that he took photos of K.L. in her
Cinderella costume with his phone, but he denied that he knew how the pornographic
photos ended up on his phone, that he took them, and that he would have done
anything to hurt K.L. or Megan’s child.  Owens stated that only he and Megan had
been with K.L. that weekend.  He also stated that he recalled telling George to
take the phone but that he did not tell George to break it.  Owens stated that
he did not know why the police wanted his phone when they came to the house and
asked him for it and that he thought it might have been because he might have
threatened someone.  Investigator Slatten told Owens that he would come and
speak with Owens again and bring the photos once he had had them developed.

State’s
Exhibit 9 began taping at 6:09 p.m. and ended around thirty minutes later. 
Investigator Slatten read Owens his rights again, Owens initialed them again
and waived them again, and Investigator Slatten showed Owens photographs from
the phone.  At first, Owens continued to deny that he recalled taking the
photos or pressing his penis against K.L.’s genitals.  He recalled taking K.L.
trick-or-treating and said that no one was home when they returned. Investigator
Slatten told Owens that because there was some confusion over whether the phone
was his or not, he had obtained a search warrant and was going to send the
phone for a forensic exam. 

During
the second interview, Owens told Investigator Slatten that he knew he had a problem
with touching children and that he needed help with it.  The interview was
almost over when Owens admitted, “I remember taking the naked pictures.”  Owens
said that he took the photos in his room, that K.L. was awake when he took the
photos, that he took the first photo with K.L. sitting on the edge of the bed,
and that he took the photo of K.L. straddling him by using a mirror, which he
confirmed was the one the police found behind his dresser.  With regard to the
pink underwear, Owens told Investigator Slatten, sometimes “the stuff”
(methamphetamine) makes him want to dress like a woman.  Owens assured
Investigator Slatten that he did not penetrate K.L.’s vagina.  

During
the guilt-innocence phase of trial, the jury also learned that the electronic monitoring
company received a “strap cut” signal from Owens’s electronic monitor on May
11, 2009, and that Owens failed to appear for trial on June 23, 2009.  Owens
remained at large for three to four months before the Alvarado police apprehended
him after a high-speed chase in the early hours of November 2, 2009.  The jury
found Owens guilty of both charges.  

Prior
to trial, Owens filed a motion for expert assistance in preparing and
presenting mitigating evidence at the penalty phase of his trial, which the
trial court denied.  The State’s only witnesses during punishment were its
fingerprint expert and Investigator Slatten.  Additional portions of Owens’s
interviews with Investigator Slatten were played for the jury as State’s
Exhibits 8A and 9A and are set out in greater detail below.  Owens did not
offer any evidence during punishment.  

Owens
made several objections during the State’s closing argument during punishment—also
discussed in greater detail below—which the trial court overruled, and the jury
found the enhancement allegations true.  The jury assessed twenty years’
confinement for the pornography possession conviction. Owens received an
automatic life sentence for the aggravated sexual assault conviction.  The
trial court sentenced Owens accordingly, and this appeal followed.

III. 
Motion to Suppress

          In
his first two points, Owens complains that the trial court erred by failing to
suppress evidence taken from Owens’s cell phone and Owens’s statements during
his two interviews with Investigator Slatten. 

A.  Standard of Review

          We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court’s decision, we do not engage in our
own factual review.  Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim.
App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth
2003, no pet.).  The trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by
State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give
almost total deference to the trial court’s rulings on (1) questions of
historical fact, even if the trial court’s determination of those facts was not
based on an evaluation of credibility and demeanor, and
(2) application-of-law-to-fact questions that turn on an evaluation of
credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez v.
State, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); Johnson v. State,
68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).  But when
application-of-law-to-fact questions do not turn on the credibility and
demeanor of the witnesses, we review the trial court’s rulings on those
questions de novo.  Amador, 221 S.W.3d at 673; Estrada v. State,
154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68 S.W.3d at
652–53.

          Stated
another way, when reviewing the trial court’s ruling on a motion to suppress,
we must view the evidence in the light most favorable to the trial court’s
ruling.  Wiede, 214 S.W.3d at 24; State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  When, as here, the record is silent on the reasons
for the trial court’s ruling, or when there are no explicit fact findings and
neither party timely requested findings and conclusions from the trial court,
we imply the necessary fact findings that would support the trial court’s
ruling if the evidence, viewed in the light most favorable to the trial court’s
ruling, supports those findings.  State v. Garcia-Cantu, 253 S.W.3d 236,
241 (Tex. Crim. App. 2008); see Wiede, 214 S.W.3d at 25.  We then review
the trial court’s legal ruling de novo unless the implied fact findings
supported by the record are also dispositive of the legal ruling.  Kelly,
204 S.W.3d at 819.

          We
must uphold the trial court’s ruling if it is supported by the record and
correct under any theory of law applicable to the case even if the trial court
gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736,
740 (Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404
(Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).

B.  Third Party Interventions and Abandonment

In
his first point, Owens argues that his Fourth Amendment rights were violated
when Corporal Arnold seized his phone and Investigator Slatten searched it.  Owens
challenges the admission of State’s Exhibits 2 (the pornographic photos), 4
(his phone), and 6 (photos of the house and his bedroom),[4]
and he specifically complains that the search of his phone was illegal because: 
(1) Corporal Arnold had already secured the phone and there were no exigent
circumstances requiring the search; (2) there was no evidence to show
abandonment of his expectation of privacy in his phone; and (3) he did not
consent to the search.  It is undisputed that Owens did not consent to a search
of his phone.

The
Fourth Amendment protects against unreasonable searches and seizures by
government officials.  U.S. Const. amend. IV; Wiede, 214 S.W.3d at 24. 
To suppress evidence because of an alleged Fourth Amendment violation, the
defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador, 221 S.W.3d at 672; see
Young v. State, 283 S.W.3d 854, 872 (Tex. Crim. App. 2009).  A defendant
satisfies this burden by establishing that a search or seizure occurred without
a warrant.  Amador, 221 S.W.3d at 672.  Once the defendant has made this
showing, the burden of proof shifts to the State, which is then required to
establish that the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id. at 672–73; Torres v. State, 182 S.W.3d 899, 902
(Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).  However, the Fourth Amendment’s
prohibition against unreasonable searches and seizures does not apply to the
actions of private individuals when those individuals are not acting as agents
of the government.  Dawson v. State, 106 S.W.3d 388, 391 (Tex.
App.—Houston [1st Dist.] 2003, no pet.).  The defendant bears the burden of
proving that a private party acted as an agent of the government.  Id. at
392.

Owens argues that George’s testimony establishes only George’s
subjective belief of what Owens wanted and an unsuccessful attempt by Owens to
hide evidence rather than the abandonment of his expectation of privacy in his
phone.  Owens directs us only to George’s testimony with regard to his
abandonment argument. 

George’s testimony and the audio recording taken by Corporal
Arnold establish that Owens communicated to George that he should take the phone
and destroy it and that George took the phone but instead handed it to the
police outside.  The trial court determined George’s credibility, and nothing
in the record indicates that the officers knew or acquiesced in the deception
perpetrated on Owens by George.  See Escobedo v. State, No.
08-08-00318-CR, 2010 WL 2621579, at *1 & n.1, 4 (Tex. App.—El Paso June 30,
2010, no pet.) (not designated for publication) (upholding denial of motion to
suppress when appellant’s roommate’s fourteen-year-old son told police that
appellant would change the numbers on “stickers”—automobile registration
decals—retrieved the stickers from the apartment, and handed them to the police
without any direction or inducement by police because the officer did not
anticipate or acquiesce in the boy’s intrusive conduct); Hopwood v. State,
No. 05-05-00110-CR, 2006 WL 349503, at *2 (Tex. App.—Dallas Feb. 16, 2006, pet.
ref’d) (not designated for publication) (upholding denial of motion to suppress
when appellant did not present evidence that the computer repairmen acted as
instruments or agents of the State, that the State knew of or acquiesced in the
conduct resulting in the initial discovery of child pornography, or that the
repairmen intended to assist law enforcement when they first viewed the
images).  The trial court had the discretion to find George credible and to
conclude as a matter of law that George was not acting as a government agent
when he took Owens’s phone and gave it to the police instead of destroying it
as Owens had requested.  We overrule this portion of Owens’s first point.

Next, we note that, contrary to Owens’s claims that Investigator
Slatten “immediately accessed the phone to observe its contents,” the record
reflects otherwise and reveals another instance of abandonment that Owens does
not address.  

The record reflects that when Investigator Slatten arrived at the
scene, he removed the phone from where Corporal Arnold had secured it with the
other phone, but, contrary to Owens’s argument that the investigator then
“immediately accessed the phone to observe its contents,” the record shows that
the investigator took both phones back into the house.  He first showed Owens the
cell phone that Owens had produced from the kitchen’s junk drawer.  Owens said
that the phone was his.  He then showed Owens the cell phone that George had
removed from the house.  Owens told the investigator that this phone was not
his.  Because Owens disclaimed the phone with the photographs after George took
it and gave it to the police, if there was no police misconduct to force him to
deny the phone, then there was no unlawful search.  See Hawkins v. State,
758 S.W.2d 255, 257 (Tex. Crim. App. 1988) (stating that when ownership of
property is abandoned or disclaimed prior to a search, no Fourth Amendment
violation occurs because the defendant has no legitimate expectation of privacy
in property that has been abandoned); see also Swearingen v. State,
101 S.W.3d 89, 101 (Tex. Crim. App. 2003) (stating that abandonment occurs if
the defendant intended to abandon the property and his decision to abandon it
is not due to police misconduct and that when a defendant voluntarily abandons
property, he lacks standing to contest the reasonableness of a search of the
abandoned property); State v. Velasquez, 994 S.W.2d 676, 678–79 (Tex.
Crim. App. 1999) (holding that appellant abandoned bag containing cocaine and
marihuana when he denied ownership of it at least twice and voiced no objection
to the officer’s search of the bag and there was no evidence of police
misconduct); McDuff v. State, 939 S.W.2d 607, 616 (Tex. Crim. App.) cert.
denied, 522 U.S. 844 (1997) (stating that intent to abandon may be inferred
from words spoken, acts done, and other objective facts and relevant
circumstances); Bayhavong v. State, No. 01-04-01120-CR, 2006 WL 407790,
at *2–3 (Tex. App.—Houston [1st Dist.] Feb. 23, 2006, no pet.) (mem. op., not
designated for publication) (holding that denying ownership of a bag “is
sufficient evidence of a person’s intent to relinquish this expectation of
privacy” in the bag) (citing Tankoy v. State, 738 S.W.2d 63, 67 (Tex.
App.—Houston [1st Dist.] 1987, no pet.) (same)).  

“The validity of a search of allegedly abandoned evidence will
turn on the nexus between the alleged abandonment and the legality of a
person’s detention.”  Hawkins, 758 S.W.2d at 260.  Nothing in the record
indicates how long Owens was in the house with the police prior to his arrest,
that he was in fact detained—other than Investigator Slatten’s testimony that
Owens was either in Corporal Arnold’s or Sergeant King’s “custody” while inside
the house—or that if he was detained, the detention was unreasonable.  Applying
the appropriate standard of review, we conclude that the trial court did not
err by denying Owens’s motion to suppress the evidence obtained from his phone,
and we overrule the remainder of his first point.

C.  Promises

          In
his second point, Owens challenges the admission of State’s Exhibits 8, 8A, 9,
and 9A, arguing that the trial court erred by denying his motion to suppress
the statements he made to Owens because “[i]t is clear that the interrogating
officer . . . informed [Owens] that making a statement could help him in his
trial” and that this was an improper inducement.  He also complains that the
improper search of his phone led to the discovery of the photos, which “were
then exploited to obtain later incriminating statements over 2 separate
custodial interrogations”; however, based on our resolution above, we need not
address this portion of his complaint.  See Tex. R. App. P. 47.1.  

A
statement may be used in evidence against an accused if it appears that the
statement was “freely and voluntarily made without compulsion or persuasion.”  Tex.
Code Crim. Proc. Ann. art. 38.21 (West 2005).  For a promise to render a
confession invalid, it must be positive, made or sanctioned by someone in
authority, and of such an influential nature that it would cause a defendant to
speak untruthfully.  Martinez v. State, 127 S.W.3d 792, 794 (Tex. Crim. App.
2004).  “Before a promise will render a confession inadmissible, it must be
shown that the promise induced the confession.”  Muniz v. State, 851
S.W.2d 238, 254 (Tex. Crim. App.) (noting that general statements made to a
suspect that a confession may sometimes result in leniency do not render a
confession involuntary because this is a statement of fact, not a promise in
exchange for a confession), cert. denied, 510 U.S. 837 (1993).  

We
have reviewed State’s Exhibits 8, 8A, 9, and 9A and cannot discern any words
spoken by Investigator Slatten that could be construed as (1) informing
Owens “that making a statement could help him in his trial” or as (2) an improper
inducement to confess.  Therefore, we overrule Owens’s second point.

IV. 
Punishment

          In
his third point, Owens complains that the trial court abused its discretion by
denying his request for a mitigation expert to be appointed to assist in the
investigation and presentation of mitigating evidence during the trial’s
punishment phase.  In his fourth and fifth points, he contends that the trial
court erred by denying his motions for mistrial.  And in his sixth point, Owens
argues that the trial court abused its discretion by imposing an automatic life
sentence.

A. 
Punishment Trial

After
the jury returned its guilty verdicts, and outside the jury’s presence, the
State informed the trial court that it intended to abandon the date allegations
in each of its enhancement notices and to “just go with the court, the county,
the cause number, and the rest of that as described in there,” stating that the
date allegations were surplusage.  Owens complained that the State had
misstated the dates, thus depriving him of notice, and offered Defense Exhibit
6, a copy of a 1988 conviction for second-degree indecency with a child, which
the trial court admitted.  Owens also admitted that he “was given notice by
being given copies of a prior conviction that occurred in 1988.”  

The
State acknowledged that the date was wrong in the enhancement for the mandatory
life sentence in the aggravated sexual assault of a child case but pointed out
that because Owens knew which conviction they were talking about—as
illustrated by Defense Exhibit 6, which had the correct cause number, court,
style, and offense—“it doesn’t sound like we have any issue as to notice.” The
State pointed out that the reason Owens had Defense Exhibit 6 was because the
State had given it to him.  The trial court overruled Owens’s objection,
stating that the date was just “a matter of identifying what you’re talking
about,” and allowing the State to abandon the date and identify the conviction
by cause number and style.  The trial court denied Owens’s request for a
continuance. 

At
the commencement of the punishment trial, the State read the enhancement
paragraphs.  The enhancement paragraph in the possession-of-child-pornography case
alleged that Owens had been convicted of felony taking and attempted taking a
weapon from a peace officer in the 363rd Judicial District Court of Dallas
County, Texas, in Cause No. F-9229649.  The enhancement paragraph in the
aggravated-sexual-assault-of-a-child case alleged that Owens had been convicted
of the felony offense of indecency with a child by contact in the Criminal
District Court No. 2 of Tarrant County, Texas, in Cause No. 0268223D.  Owens
pleaded “not true” to both enhancement paragraphs. 

The
trial court admitted State’s Exhibits 19, 20, 21, and 22 through the testimony
of Weatherford Police Officer Beth Turnbow, the State’s fingerprint expert.  State’s
Exhibits 19 and 21 are copies of Owens’s 1992 conviction in cause number F-9229649
for the taking and attempted taking of a weapon from a peace officer, for which
Owens plea-bargained for six years’ confinement.  State’s Exhibit 20 is a copy
of Owens’s 1988 indecency with a child by contact conviction in cause number
0268223D, in Criminal District Court Number 2 of Tarrant County—the same
conviction as in Defense Exhibit 6—which judgment revoked Owens’s probation.  State’s
Exhibit 22 contains Owens’s fingerprints, which Officer Turnbow took before
trial.  The exhibits were admitted in evidence and published to the jury
subject to Owens’s objections to State’s Exhibit 20, discussed in greater
detail above.  Officer Turnbow testified that the fingerprints in State’s
Exhibits 19 through 21 matched the fingerprints in State’s Exhibit 22—that is,
she determined that Owens made all of the fingerprints in these exhibits. 

Investigator
Slatten testified about Owens describing his thirty-year drug abuse history
during his interviews.  Additional portions of State’s Exhibits 8 and 9 were
admitted and published as State’s Exhibits 8A and 9A.  Investigator Slatten
testified, and the recordings confirmed, that Owens had pleaded guilty to
indecency with a child by contact (fondling) in Tarrant County and that Owens
said that he deliberately tried to stay away from small children because of his
issues with them.  The recordings revealed that the police found marijuana and
drug paraphernalia in Owens’s room, that Owens said that he “doped up” every
weekend, and that Owens said that he had been on methamphetamine for thirty
years.  In State’s Exhibit 8A, Owens said, “I don’t think about touching kids
when I’m not on meth,” and he admitted that he should not have obtained drugs
before going to get K.L. that weekend.  He took methamphetamine before he went
to pick K.L. up—he was already high when he drove to get her—and when they
returned to the house after trick-or-treating, he took more.  Owens admitted
that he had a problem with touching children but blamed his problem on his
underlying methamphetamine addiction.  He also admitted to beating a male child
“pretty bad” when the child was two or three but stated that he did not
sexually assault the boy, that he was not arrested or charged with penetration,
and that he thought someone else had sexually assaulted that child.  The
details of Investigator Slatten’s testimony during cross-examination are set
out below.

After
Investigator Slatten’s testimony, the State rested, and while the jury was in
recess, Owens’s counsel informed the trial court, 

The only other
witness that was identified to us or that we discovered any mitigating facts
from is the defendant’s mother.  We’ve talked with her extensively, including
just a few moments ago. . . .  [A]fter talking with her, she doesn’t want to
testify.  We don’t want to call her under these circumstances.  

 

Owens
agreed with his defense counsel that he was okay with not calling his mother to
testify.  The defense rested, and both sides closed upon the jury’s return.  We
address the State’s closing argument below, in the context of Owens’s fourth
and fifth points.

B. 
Automatic Life Sentence

In
his sixth point, Owens complains that he should not have received an automatic
life sentence for his aggravated sexual assault of a child conviction. 

Under
section 12.42(c)(2), a defendant shall be punished by imprisonment for life if
he is convicted of an offense under section 22.021 of the penal code, among
others, and he has previously been convicted of an offense under section 21.11
(indecency with a child), among others.  See Tex. Penal Code Ann. § 12.42(c)(2)(A)(i),
(B)(ii) (West 2011).

Owens
complains that “[i]t was not until after the guilty verdicts were delivered
that the State attempted to abandon the dates alleged as to the prior felony
convictions and that:

[i]n light of the
extremely harsh nature of the punishment in light of proof of a second sexual
offense[,] it is not too much to ask that the State give correct notice of the
dates of conviction for the prior conviction.  Once alleged[,] these
identifiers for a conviction are not surplusage but instead form an essential
part of the due process notice required for a successful and proper enhancement
of punishment.  Strict proof should be required of each and every allegation
made by the State to prove such a conviction.  In this case, the State did not
allege the correct date of the prior felony conviction and thus should not be
able to ignore the same to obtain the enhanced penalty herein.

 

Owens
appears to make two complaints:  (1) that he did not receive proper notice of
the prior conviction because the date of conviction is not surplusage and (2)
that the State did not sufficiently prove the prior conviction.[5] 
We address the second complaint first.

          “To
establish that a defendant was convicted of an enhancement offense, the State
must (1) prove the existence of the conviction and (2) link the conviction to
the defendant.”  Davis v. State, 268 S.W.3d 683, 715 (Tex. App.—Fort
Worth 2008, pet. ref’d); see also Flowers v. State, 220 S.W.3d 919, 921
(Tex. Crim. App. 2007) (stating same).  “No specific document or mode of proof
is required to prove these two elements” as long as they are proved beyond a
reasonable doubt.  Flowers, 220 S.W.3d at 921 (noting that there is no
“best evidence” rule in Texas that requires that the fact of a prior conviction
be proven with any document, much less any specific document).  The State may
prove both of these elements in a number of different ways, including (1) the
defendant’s admission or stipulation, (2) testimony by a person who was present
when the person was convicted of the specified crime and can identify the
defendant as that person, or (3) documentary proof (such as a judgment) that
contains sufficient information to establish both the existence of a prior
conviction and the defendant’s identity as the person convicted.  Id. at
921–22.  Because Owens admitted in his second videotaped interview with
Investigator Slatten that he had an indecency with a child conviction from
Tarrant County and the State offered, and the trial court admitted, documentary
proof of the conviction and Owens’s identity, we overrule this portion of
Owens’s sixth point.  See id.

          With
regard to Owens’s notice-surplusage argument, on February 19, 2009, the State
filed its notice of intent to use prior convictions to enhance punishment under
penal code section 12.42, listing the 1992 “taking and attempt taking a weapon
from a peace officer” conviction first and then the “felony offense of
Indecency With a Child, to-wit:  Contact” conviction, alleged to have occurred
on August 25, 1998, “in the Criminal District Court Number Two of Tarrant
County, Texas, in Cause No. 0268223D, styled the State of Texas vs. Mark
Gregory Owens.”  Also on February 19, 2009, the State filed a notice of intent
to use prior convictions to enhance punishment pursuant to penal code section
12.42(c)(2)—Mandatory Life Sentence—and set out the same information above
regarding the indecency conviction.  On February 8, 2010, the State filed
another notice of intent to use prior convictions to enhance punishment
pursuant to penal code section 12.42, setting out the same enhancement
allegations as its first notice, but reversing the order, listing the 1998
conviction first, followed by the 1992 conviction.  The guilt-innocence phase
of trial concluded on February 10, 2010—the same day that Owens objected to the
dates in the enhancement allegations.  The punishment phase of trial began
February 16, 2010. 

          It
is not necessary to allege prior convictions for enhancement purposes with the
same particularity that must be used in charging on the primary offense, and
variances between an enhancement allegation and the proof with regard to cause
numbers, courts, and dates of conviction have all been held to be immaterial.  Freda
v. State, 704 S.W.2d 41, 42–43 (Tex. Crim. App. 1986); see also Pelache
v. State, 324 S.W.3d 568, 576 (Tex. Crim. App. 2010) (“It is well-settled,
however, that due process does not require pretrial notice ‘that the trial on
the substantive offense will be followed by a habitual criminal proceeding.’”);
Villescas v. State, 189 S.W.3d 290, 293–94 (Tex. Crim. App. 2006) (same). 


Moreover,
neither the indictment nor the allegation must allege or recite the dates of
conviction as long as the allegations are specific enough to apprise the
defendant of the conviction being used against him and as long as the proof at
trial shows the necessary succession of offenses and final convictions.  Hernandez
v. State, 530 S.W.2d 563, 568 (Tex. Crim. App. 1975); see also Hollins
v. State, 571 S.W.2d 873, 875–76 & n.1 (Tex. Crim. App. 1978) (stating
that an accused is entitled to “proper notice” of any prior conviction alleged
for enhancement so that he is aware that “a greater penalty is to be sought
than for a first offense, and to enable him to take issue thereon, and if
possible show there is a mistake in identity, or that there was no final former
conviction or the like”).  The object of the doctrine of variance is to avoid
surprise to the defendant; only if the variance was such as to mislead the
defendant to his prejudice is the variance considered material.  Freda,
704 S.W.2d at 42.

          Notwithstanding
the State’s typo—1998 instead of 1988—Owens received notice that the State
intended to enhance punishment, and he does not argue here that he was unfairly
surprised by or unable to prepare to defend against the State’s attempt to
enhance his sentence.  To the contrary, the record reflects that for over a
year, Owens was aware of the State’s intent to enhance his sentence with a
conviction for indecency with a child from “the Criminal District Court Number
Two of Tarrant County, Texas, in Cause No. 0268223D, styled the State of Texas
vs. Mark Gregory Owens,” and that this enhancement could result in a life
sentence under penal code section 12.42(c)(2).  Further, Owens had actual
notice, as demonstrated by his offer of Defense Exhibit 6 into evidence at the
hearing on his objections, of the conviction the State intended to use. 

Because
the State was not required to allege the date of the prior,
punishment-enhancing conviction in its notice, the erroneous date was
immaterial.  Likewise, Owens had actual pretrial notice of the conviction that
the State intended to use when the allegation in the notice listed the correct
cause number, court, and county, even though it incorrectly stated the year.  Combined
with the copy of the judgment that the State gave to Owens, the allegation
sufficiently apprised Owens of the prior conviction being used against him.  Further,
Owens does not argue that he was misled by the incorrect date or explain how he
was prejudiced by it.  We overrule the remainder of Owens’s sixth point.  See
Hollins, 571 S.W.2d at 875 (stating that “proper notice” is “a
description of the judgment of former conviction that will enable [the accused]
to find the record and make preparation for a trial of the question whether he
is the convict named therein”).    

C. 
Motions for Mistrial

Owens
moved for mistrial twice during the State’s closing argument in the trial’s
punishment phase.  The prosecutor argued:

          We are
asking you to find that it is true, that it has been proven to you beyond a
reasonable doubt that the person who was convicted in State’s Exhibit No. 20
[the 1988 conviction] of indecency with a child was in fact the same person as
the person in the courtroom today, Mark Gregory Owen[s].

 

          Not only
did you have the testimony from Beth Turnbow, the fingerprint expert, that it
is in fact the same person, but you also heard Mr. Owen[s] admit that on the
tape, that he was convicted of that, that that was a charge in Tarrant County. 

 

          Now if you
do find that you have proof beyond a reasonable doubt that that is true, which
we believe you do, then we’re asking you to sign the top—the top verdict form. 
It says that, “We find that the allegations set out in the Enhancement
Paragraph [are] true.”  That’s the blank that we’re asking you to sign.

 

          Now if
you find that it is true, the Judge will automatically assess a sentence that
is required by law.  [Emphasis added.]

 

Owens
objected, complaining that it was improper to inform the jury of the result of
its verdict.  The trial court sustained his objection, granted his requested
instruction to disregard, and then denied his motion for mistrial.  After the
trial court denied Owens’s motion for mistrial, the prosecutor resumed her
argument, stating,

And if you do not
find that the top paragraph is true, then you’ll move to the bottom paragraph.

 

          So just to
be clear, if you find that the top one is true, you’re done.  If you move to
the bottom paragraph, then it says you may assess a punishment from 25 to 99
years or life and a fine.  We are not asking you to assess a fine in either
case.  You don’t have to do that if you don’t want to.

 

          In the
event that you do move to this bottom paragraph, obviously we are asking you
for the maximum, which would be 99 years or life. . . .  And again, ladies and
gentlemen, I’ll just remind you that there’s not really any dispute based on
the testimony that you heard— [Emphasis added.]

 

Owens
objected, stating that the prosecutor made a comment on his failure to testify
“by saying there’s no dispute,” and the trial court sustained the objection,
instructed the jury not to consider the last comment, and then denied Owens’s
motion for mistrial.  The prosecutor concluded by stating, “Ladies and
gentlemen, based on the evidence that you heard, Beth Turnbow told you that it
is the same person.  And the defendant admitted to the one in Tarrant County.” 

In
his fourth point, Owens complains that the trial court abused its discretion by
denying his first motion for mistrial because the prosecutor informed the jury
of the result of its verdict in the aggravated sexual assault case as being an
automatic sentence.  In his fifth point, Owens argues that the trial court
abused its discretion by denying his second motion for mistrial because the
prosecutor commented on his failure to testify. 

1.   
 Standard of Review

To
be permissible, the State’s jury argument must fall within one of the following
four general areas:  (1) summation
of the evidence; (2) reasonable deduction from the evidence;
(3) answer to argument of opposing counsel; or (4) plea for law
enforcement.  Felder v. State, 848 S.W.2d 85, 94–95 (Tex. Crim. App.
1992), cert. denied, 510 U.S. 829 (1993); Alejandro v. State, 493
S.W.2d 230, 231 (Tex. Crim. App. 1973).

When
a trial court sustains an objection and instructs the jury to disregard but
denies a defendant’s motion for a mistrial, the issue is whether the trial
court abused its discretion by denying the mistrial.  Hawkins v. State,
135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  Only in extreme circumstances,
when the prejudice caused by the improper argument is incurable, i.e., “so
prejudicial that expenditure of further time and expense would be wasteful and
futile,” will a mistrial be required.  Id. at 77 ; see also
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004).  In determining whether a trial court abused
its discretion by denying a mistrial, we balance three
factors:  (1) the severity of the misconduct (prejudicial
effect); (2) curative measures; and (3) the certainty of the
punishment assessed absent the misconduct.  Hawkins, 135 S.W.3d at 77; Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), cert.
denied, 526 U.S. 1070 (1999).  

2.   
First Statement

Owens
directs us to no authority to support his argument that it was improper for the
prosecutor to tell the jury that if it found the felony enhancement allegation
to be true “that punishment of life was automatic.”  Further, the prosecutor
never mentioned automatic life punishment. Rather, the prosecutor stated that
the trial court would “automatically assess a sentence that is required by
law.”  And while prejudice caused by improper jury argument remarks is “clearly
the touchstone” of the “severity of the misconduct” factor, see Hawkins,
135 S.W.3d at 77, as the State points out, “[T]here is no error in correctly
arguing the law, even if the law is not included in the court’s charge.”  See
Ratliff v. State, 320 S.W.3d 857, 863 (Tex. App.—Fort Worth 2010, pet.
ref’d).  

Under
section 12.42(c)(2), if the jury found the enhancement allegation “true,” then
the trial court would punish Owens for life based on his instant conviction
under penal code section 22.021 and his prior conviction under section 21.11.  See
Tex. Penal Code Ann. § 12.42(c)(2)(A)(i), (B)(ii).  In light of the law, the
prosecutor’s statement, “Now if you find that it is true, the Judge will automatically
assess a sentence that is required by law,” is not incorrect, even though it
was not included in the jury charge.  See Ratliff, 320 S.W.3d at 863. 
Further, even assuming the State’s argument was improper, because the trial
court issued an instruction to disregard, Owens admitted to his conviction for
indecency with a child in the second videotaped interview, and the jury had
before it the judgment of conviction for indecency with a child, the jury
finding his prior conviction “true” was certain under the circumstances here.  See
Hawkins, 135 S.W.3d at 77; Mosley, 983 S.W.2d at 259.  We overrule
Owens’s fourth point.

3.   
Second Statement

In
his fifth point, Owens argues that because he did not testify during either the
guilt-innocence phase or the punishment phase of his trial and did not offer
any evidence or the testimony of any witnesses during the punishment phase,
“[i]t was therefore improper for the Prosecutor to argue to the jury that it
should find the enhancement allegations to be True because no contradictory
evidence ha[d] been offered.”  Owens complains that because he was the only
person who could have offered contrary evidence with regard to the alleged
felony convictions, the prosecutor’s comment was a direct comment on his
failure to testify. 

“The
test for determining whether prosecutorial argument is a comment on a defendant’s
failure to testify ‘is whether the language used was manifestly intended or was
of such a character that the jury would necessarily and naturally take it as a
comment on the defendant’s failure to testify.’”  Busby v. State, 253
S.W.3d 661, 666 (Tex. Crim. App.) (quoting Cruz v. State, 225 S.W.3d
546, 548 (Tex. Crim. App. 2007)), cert. denied, 129 S. Ct. 625 (2008).  “It
is not sufficient that the language used might impliedly or indirectly be so
construed.”  Id.  And any objectionable argument should be evaluated on
a case-by-case basis for what it would “necessarily and naturally” mean to a
jury when taken in the full context of its utterance.  Cruz, 225 S.W.3d
at 549 & nn.9–10 (discussing Wolfe v. State, 917 S.W.2d 270, 280
(Tex. Crim. App. 1996), in which the court held that a prosecutor’s reference
in jury argument to information not provided by a defendant at trial was not a
comment on his failure to testify when his own exculpatory statement was
admitted into evidence).

In Busby,
the State’s closing arguments referred to inconsistencies between statements
given to authorities by appellant and referred to his specific statements.  253
S.W.3d at 666.  The court concluded that it was “reasonable and proper for the
prosecutor to comment on the shifting nature of appellant’s custodial
statements that were admitted into evidence.”  Id.  The court followed Cruz,
concluding that the controversial portions of the State’s arguments referred to
specific statements that the appellant had made before trial.  Id. at
666–67; see also Cruz, 225 S.W.3d at 549–50 (concluding that it
was clear from the record that the prosecutor’s argument to the jury referred
to the appellant’s own written statement that had been admitted into evidence
and was therefore not comments on his failure to testify).  

Here,
Owens’s second recorded interview was played for the jury.  In that interview,
he admits that he has a conviction for indecency with a child.  Owens’s recorded
statement did not conflict with any of the other testimony during either phase
of trial.  Based on the context of the State’s jury argument, we cannot say
that it was “manifestly intended or was of such a character that the jury would
necessarily and naturally take it as a comment on the defendant’s failure to
testify.”  See Busby, 253 S.W.3d at 666; Cruz, 225 S.W.3d at
549.  Further, the trial court gave an instruction to the jury to disregard the
argument and, as set out above, Owens’s punishment was certain under the
circumstances here—he admitted to using methamphetamine for thirty years, even
though it made him want to touch children inappropriately, and he admitted to
taking the pornographic photographs, including the one showing his penis
pressed against his two-year-old granddaughter’s genitals.  See Hawkins,
135 S.W.3d at 77; Mosley, 983 S.W.2d at 259.  Accordingly, the trial
court did not abuse its discretion by denying the motion for mistrial, and we
overrule Owens’s fifth point. 

D. 
Mitigation Expert

          In
his third point, Owens complains that although the trial court appointed an
investigator to assist his defense counsel,[6] it denied him an expert
who could have evaluated and presented the mitigating effect of the evidence
collected by the investigator, thus denying him a fair and impartial trial.  

Due
process requires access to the raw materials integral to the building of an
effective defense—including appointment of an expert—but in implementing the
right to receive an expert, the defendant has the burden to make a sufficient
threshold showing of the need for the expert’s assistance.  Griffith v.
State, 983 S.W.2d 282, 286–87 (Tex. Crim. App. 1998) (citing Ake v.
Oklahoma, 470 U.S. 68, 77, 105 S. Ct. 1087, 1093 (1985)), cert. denied,
528 U.S. 826 (1999).  To carry this burden, a defendant must offer more “than
undeveloped assertions that the requested assistance would be beneficial.”  Williams
v. State, 958 S.W.2d 186, 192 (Tex. Crim. App. 1997) (citing Caldwell v.
Mississippi, 472 U.S. 320, 323–24 n.1, 105 S. Ct. 2633, 2637 n.1 (1985)).  The
defendant must also show that the substance of the expert’s testimony is
“likely to be a significant factor” at trial.  See Rey v. State, 897
S.W.2d 333, 339 (Tex. Crim. App. 1995) (citing Ake, 470 U.S. at
74, 82–83, 86, 105 S. Ct. at 1091–92, 1095–96, 1097–98).  Our court of criminal
appeals has noted that 

[i]n cases holding
that a sufficient showing was not made under Ake, the defendant
typically has failed to support his motion with affidavits or other evidence in
support of his defensive theory, an explanation as to what his defensive theory
was and why expert assistance would be helpful in establishing that theory, or
a showing that there was a reason to question the State’s expert and proof.[[7]]

 

Id. at 341.
 In contrast, a defendant meets his threshold burden if he has “made his
defensive theory clear to the trial court and supported it with factual
allegations and/or evidence that expert testimony would support his theory.”  Id. 
We analyze whether a defendant made his threshold showing by examining the
facts and arguments before the trial court at the time of the defendant’s
motion.  See id. at 342 n.8.  The key question is “whether there is a
high risk of an inaccurate verdict absent the appointment of the requested
expert.”  Busby v. State, 990 S.W.2d 263, 271 (Tex. Crim. App. 1999), cert.
denied, 528 U.S. 1081 (2000).  We review the denial of a motion for expert
assistance for an abuse of discretion.  Griffith, 983 S.W.2d at 287.

Owens
argues that he needed a mitigation expert because 

[i]n the trial it was developed
that [Owens] had been abused as a child and as a result had developed severe
alcohol and drug abuse problems which also played a part in the commission of
the instant offense.  The record also developed that [Owens’s] outcry as a
child was not supported by his mother which also affected his development as an
adult.  All of these matters required expert assistance to not only test but
also evaluate and present from a psychological standpoint.  [Emphasis added.]

 

As
noted above, however, we must rely on the facts and arguments before the trial
court at the time of the defendant’s motion in determining whether the trial
court abused its discretion by denying the motion.[8] 
See Rey, 897 S.W.2d at 342 n.8.    

          Owens
argued in his motion for expert assistance, which he filed in each case, that
it “is necessary that defense counsel be provided with expert assistance in the
area of mental health, sex offender profiling and future dangerousness/risk
assessment . . . so that the Defendant may adequately and effectively
prepare and present mitigating evidence at the penalty phase of the trial on
the merits,” attributing this need to “the complicated and serious nature of
the cases, the number of witnesses that may be testifying for the State of
Texas and against the Defendant, and the number and complexity of the evidence
and potential exhibits herein.”  Owens did not attach an affidavit to his
motion or provide any evidence to support these assertions at the hearing on
the motion.[9] Rather, at the pretrial
hearing, Owens continued his argument that he needed a mitigation expert to
help collect and present evidence for punishment for the possession of child
pornography charge and, “in the event that the automatic life provision is not
triggered,” for the aggravated sexual assault charge.  He did not give the
substance of his proposed expert’s testimony or show that such testimony was
likely to be a significant factor at trial.[10]  See Rey, 897
S.W.2d at 339.  

Based
on this record, Owens did not meet his burden to make a threshold showing for appointment
of an expert.  See Griffith, 983 S.W.2d at 287; Rey, 897 S.W.2d
at 339, 341; cf. Williams, 958 S.W.2d at 194–95 (noting that appellant’s
motion revealed that his mental condition would be a significant factor during
punishment, that appellant had related to counsel facts about his history of
drug abuse as well as his history of being abused as a child and alleged that
these factors could excuse his conduct or be a factor in mitigation of
punishment, and that the proposed expert’s affidavit attached to the motion
included the expert’s qualifications and her statements that her conclusions in
the affidavit only amounted to a preliminary evaluation, her conclusions as to
certain disorders from which appellant might be suffering, and a statement that
a complete evaluation would require further testing and evaluation).  We
overrule Owens’s third point.

V. 
Conclusion

          Having
overruled all of Owens’s points, we affirm the trial court’s judgments.

 

 

PER CURIAM

 

PANEL: 
MCCOY, WALKER, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011









[1]See Tex. R. App. P. 47.4.





[2]Owens gave the police
consent to search his bedroom, where they found a mirror.  Investigator Slatten
called Megan later and asked her to bring to the sheriff’s office the mirror
from Owens’s room and the pink panties worn in one of the photos, which she
found in her daughter’s room.





[3]State’s Exhibit 13 is a print
out of the phone’s “sent” text messages, State’s Exhibit 14 is a print out of
the phone’s inbox containing “received” text messages, State’s Exhibit 15 is a
print out of the phone’s call log history, State’s Exhibit 16 is a print out of
the list of photos on the phone, with their dates, times, and file names, and
State’s Exhibit 17 is a compact disk containing all of the photos that
Detective Lawrence could copy from the phone.  One of the “sent” text messages
in State’s Exhibit 13 reads, “Can I get [K.L.] when I get off work?”





[4]Owens gave consent to
search his bedroom and the house, and the eight photographs of the house in
State’s Exhibit 6 were admitted without objection.  Therefore, we overrule this
portion of his first point.





[5]Owens does not argue that
he was prejudiced by the trial court’s denial of his motion for continuance.





[6]The trial court appointed
not only an investigator but also co-counsel to assist with Owens’s case.





[7]Other than calling Officer
Turnbow as its fingerprints expert, the State presented no expert witnesses
during the punishment phase of trial, and Owens does not argue that he required
an expert with regard to Turnbow’s testimony.  See Jackson v. State, 992
S.W.2d 469, 474 n.5 (Tex. Crim. App. 1999) (“There is no error in refusing to
appoint an expert witness to assist an indigent defendant in rebutting a type
of expert opinion that the State’s witness did not present.”).





[8]Further, the record does
not reflect that this testimony was actually developed either at the pretrial
hearing on Owens’s motion or during the punishment phase of trial.  Rather,
during the punishment phase cross-examination of Investigator Slatten, Owens’s
counsel asked the investigator whether he knew that Owens had been abused by
his stepfather, to which the investigator replied, “No[,] I did not.” 
Investigator Slatten agreed with the general statements that “a child that was
abused between the ages of say eight to 10, that’s going to affect them,” that
“some of the effects that that can have, they’ll turn to alcohol and drug use,”
that “30 years of drug use is going to have a lot of effect on a person,” and
that “methamphetamine’s a scourge” and highly addictive.  He said “[N]o,” when
asked if he had ever interviewed Owens’s mother and when asked if he had asked
about whether Owens had been abused as a child.  On redirect, when asked
whether he had any idea of whether Owens had been sexually abused, Investigator
Slatten again said, “No.”  Owens’s mother declined to testify and Owens decided
not to call her as a witness.  Therefore, Owens’s argument that he needed an
expert because it was developed at trial that Owens had been abused as a child
and that his mother failed to support his outcry—affecting his development as
an adult and his dependencies on alcohol and drugs—lacks support in the record
even if we were to consider it in determining whether the trial court abused
its discretion by denying his motion.  See, e.g., Johnston v. State, 230
S.W.3d 450, 456 n.6 (Tex. App.—Fort Worth 2007, no pet.) (stating that
questions are not evidence).





[9]Although the State claims
that the record does not reveal that Owens’s motion was ever heard or denied by
the trial court, this is incorrect.





[10]During the hearing, the
State pointed out to the trial court that because Owens had a prior indecency
conviction that the State did not anticipate having any difficulty proving, if
found guilty of aggravated sexual assault, Owens would receive a mandatory life
sentence and so there would be no punishment hearing on that charge and that,
as the cases were consolidated, the State could ask that the sentences be
stacked under penal code section 3.03, resulting in life without the
possibility of parole, but “whether they’re stacked or concurrently really
would make no difference as far as how that sentence would actually be served.”